E-FILED
Monday, 30 December, 2019  02:52:52 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NOREEN PERDUE, ELIZABETH DAVIS-BERG, DUSTIN MURRAY, MELANIE SAVOIE, CHERYL ELLINGSON, ANGELA TRANG, HARLEY WILLIAMS, MARY WILLIAMS, GORDON GREWING, MELISSA WARD, and PATRICIA DAVIS, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | CASE NO. 1:19-cv-01330-MMM-JEH **PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| HY-VEE, INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

Benjamin F. Johns
Andrew W. Ferich
Alex M. Kashurba
CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com
awf@chimicles.com
amk@chimicles.com

Ben Barnow
Erich P. Schork
BARNOW AND ASSOCIATES, P.C.
205 W. Randolph St. Ste. 1630
Chicago, IL 60606
Tel: (312) 621-2000
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

*Interim Co-Lead Class Counsel*

[Additional Counsel on Signature Page]

Plaintiffs Noreen Perdue, Elizabeth Davis-Berg, Dustin Murray, Melanie Savoie, Cheryl Ellingson, Angela Trang, Harley Williams, Mary Williams, Gordon Grewing, Melissa Ward, and Patricia Davis ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, by and through undersigned counsel, bring this Consolidated Second Amended Class Action Complaint against defendant Hy-Vee, Inc. ("Hy-Vee" or "Defendant").

## NATURE OF THE ACTION

1. Plaintiffs bring this action, individually and on behalf of all others similarly situated whose private and confidential financial information, including credit card and debit card numbers, expiration dates, cardholder names, internal card verification codes, and other payment card information (collectively, "Card Information") was compromised in a massive security breach of Hy-Vee's computer servers and payment card environment (the "Data Breach").

2. As a result of the Data Breach, millions of consumers who made purchases at Hy-Vee's gas pumps, restaurants, and drive-through coffee shops have had their Card Information exposed to criminals.

3. Wawa's initial Notice of Payment Card Data Incident (the "Notice")[1] contained very little detail about the Data Breach. In fact, Hy-Vee first posted the Notice and announced the Data Breach to the public on August 14, 2019, but for nearly two months after that announcement, it provided little detail about the Data Breach and the steps it was taking to address it.[2] Hy-Vee

---

[1] HY-VEE, *Notice of Payment Card Data Incident* (Aug. 14, 2019), https://www.hy-vee.com/corporate/news-events/announcements/notice-of-payment-card-data-incident/ (last visited Dec. 30, 2019).
[2] *Hy-Vee explains why few details have been released in data breach* (Aug. 29, 2019 6:42 a.m. CDT), https://www.kcci.com/article/hy-vee-explains-why-few-details-have-been-released-in-data-breach/28854757 (last visited Dec. 30, 2019).

decided to wait until its internal investigation of the Data Breach concluded until providing its customers with critical details. This delay hindered Data Breach victims from taking measures to protect against fraud and identity theft.

4.     The Notice provided that "[b]ecause the investigation is in its earliest stages, we do not have any additional details to provide at this time. We will provide notification to our customers as we get further clarity about the specific timeframes and locations that may have been involved." Furthermore, the Notice acknowledges that Hy-Vee used heightened data security technology (i.e., point-to-point encryption) at its grocery store, pharmacy, and convenience store locations, but not at the locations that were impacted by the Data Breach.[3]

5.     Only on October 3, 2019—nearly two months after initially announcing the Data Breach—did Hy-Vee share additional details with consumers. In a company announcement titled "Hy-Vee Reports Findings from Investigation of Payment Card Data Incident" (the "Report"),[4] Hy-Vee provided additional information about the breach, including that the breach was detected on July 29, 2019; the window of the breach was from December 14, 2018 to July 29, 2019 for fuel pumps (i.e., over 7 months long), and from January 15, 2019 to July 29, 2019 for restaurants and coffee shops (i.e., over 6 months long); that for some restaurants, the breach began as early as November 9, 2018; and that for one location, the breach continued through August 2, 2019.[5]

6.     In the Report, Hy-Vee also announced that it had published a list of locations and an online tool for determining whether a given location was impacted by the Data Breach, and

---

[3] HY-VEE, *Notice of Payment Card Data Incident*, *supra* note 1.
[4] HY-VEE, *Hy-Vee Reports Findings from Investigation of Payment Card Data Incident* (Oct. 3, 2019), https://www.hy-vee.com/PaymentCardIncident/ (last visited Dec. 30, 2019).
[5] *Id*.

3

during what period.  The Report also indicated that Hy-Vee will be sending—that is, it still had

not at the time sent—notices to individuals impacted by the Data Breach.[6]

7.      As alleged herein, Hy-Vee's failure to implement adequate data security measures

to protect its customers' sensitive Card Information directly and proximately caused injuries to

Plaintiffs and class members.

8.      The Data Breach was the inevitable result of Hy-Vee's inadequate data security

measures and cavalier approach to data security. Despite the well-publicized and ever-growing

threat of security breaches involving payment card networks and systems, and even though these

types of data breaches were and are occurring frequently throughout the restaurant and retail

industries, Hy-Vee failed to ensure that it maintained adequate data security measures to protect

customer Card Information from criminals.

9.      As a direct and proximate result of Hy-Vee's conduct and data security negligence,

a massive amount of customer information was stolen from Hy-Vee and exposed to criminals.

While Hy-Vee has not confirmed the exact number of cards that were compromised, according to

Krebs on Security—a leading expert on data security—more than 5.3 million accounts belonging

to cardholders from 35 states have had their sensitive Card Information placed on the dark web for

sale to fraudsters.[7] Victims of the Data Breach have had their sensitive Card Information

compromised, had their privacy rights violated, been exposed to the increased risk of fraud and

identify theft, lost control over their personal and financial information, and otherwise have been

injured.

---

[6] *Id.*

[7] *Breach at Hy-Vee Supermarket Chain Tied to Sale of 5M+ Stolen Credit, Debit Cards*, KREBSONSECURITY (Aug. 22, 2019), https://krebsonsecurity.com/2019/08/breach-at-hy-vee-supermarket-chain-tied-to-sale-of-5m-stolen-credit-debit-cards/ (last visited Dec. 30, 2019).

10.     Moreover, Plaintiffs and class members have been forced to spend significant time associated with, among other things, closing out and opening new credit or debit card accounts, ordering replacement cards, obtaining fraud monitoring services, losing access to cash flow and credit lines, monitoring credit reports and accounts, purchasing identity theft insurance, and/or other losses resulting from the unauthorized use of their cards or accounts.

11.     Rather than providing meaningful assistance to consumers to help deal with the fraud that has and will continue to result from the Data Breach, Hy-Vee simply tells Data Breach victims to "closely monitor [their] payment card statements for unauthorized activity."[8] In contrast to what has been frequently made available to consumers in other data breaches, Hy-Vee has not offered or provided any credit monitoring service or fraud insurance to date.

12.     Plaintiffs and class members seek to recover damages caused by Hy-Vee's negligence, negligence *per se*, breach of contract, and violations of state consumer protection statutes. Additionally, Plaintiffs seek declaratory and injunctive relief as a result of the conduct of Hy-Vee discussed herein.

## PARTIES

**Plaintiff Noreen Perdue**

13.     Plaintiff Noreen Perdue is an adult residing in Avon, Illinois. During the period that the Data Breach occurred, Ms. Perdue used her debit card to make a purchase in the amount of $40 from the Hy-Vee gas pump location in Galesburg, Illinois, which was impacted by the Data Breach.

14.     On August 26, 2019, Ms. Perdue received a letter from her bank, Thompkins State Bank, which notified her that her debit card had been compromised. She also received a phone call

---

[8] HY-VEE, *Notice of Payment Card Data Incident*, *supra* note 1.

5

from her bank's fraud department which confirmed that her card was compromised in the Data Breach. To date, Hy-Vee has not provided direct notice of the Data Breach to Ms. Perdue.

15.     As a result, Ms. Perdue went for three weeks without access to her card, which is the only way she can access her money and pay her bills.  During that time, she was without access to these funds.

16.     As a result of being victimized by the Data Breach, Ms. Perdue was required to spend a significant amount of time addressing fraud concerns related to her compromised card.

17.     Specifically, Ms. Perdue has set-up theft monitoring for her bank account. Since the breach, she has expended a considerable amount of time continuously checking her online bank account several times daily for fraudulent activity.

18.     Had Ms. Perdue known that Hy-Vee would not adequately protect her Card Information and other sensitive information entrusted to it, she would not have made a purchase at Hy-Vee using her payment card.

19.     As a result of Hy-Vee's failure to adequately safeguard Plaintiff Perdue's Card Information, she has been injured.

**Plaintiff Elizabeth Davis-Berg**

20.     Plaintiff Elizabeth Davis-Berg is an adult residing in Homewood, Illinois.  Ms. Davis-Berg used a credit card to pay for gas at a Hy-Vee location in Lawrence, Kansas on March 29, 2019 and May 20, 2019.  This gas pump location was impacted by the Data Breach.

21.     Since the Data Breach, Ms. Davis-Berg, has spent approximately two hours reviewing her accounts for fraudulent charges to ensure that she has incurred none resulting from the Data Breach.

6

22.     To date, Hy-Vee has provided no direct notice of the Data Breach to Ms. Davis-Berg.

23.     Had Ms. Davis- Berg known that Hy-Vee would not adequately protect her Card Information and other sensitive information entrusted to it, she would not have made a purchase at Hy-Vee using her payment card.

24.     As a result of Hy-Vee's failure to adequately safeguard Plaintiff's Card Information, Ms. Davis-Berg has been injured.

**Plaintiff Dustin Murray**

25.     Plaintiff Dustin Murray is an adult residing in Columbia, Missouri.  Mr. Murray is a regular customer of Hy-Vee and eats at Hy-Vee's in-store restaurant approximately 2-3 times per month. Mr. Murray used his debit card multiple times at two separate Hy-Vee Market Grille restaurant locations in Columbia, Missouri during the breach period, both of which locations were impacted by the Data Breach.

26.     On September 16, 2019 Mr. Murray became aware of the Data Breach after his bank, Central Bank, sent him an email notification stating that his debit card was affected by the Data Breach.  To date, Hy-Vee has provided no direct notice of the Data Breach to Mr. Murray.

27.     As a result of the breach, Central Bank was forced to close Mr. Murray's debit card account and issue him a new card.

28.     As a result of having been victimized by the Data Breach, Mr. Murray was required to spend approximately 3 hours dealing with the side-effects of the breach.

29.     Had Mr. Murray known that Hy-Vee would not adequately protect his sensitive Card Information, he would not have made a purchase at Hy-Vee using his payment card.

30.    As a result of Hy-Vee's failure to adequately safeguard Mr. Murray's Card Information, Mr. Murray has been injured.

**Plaintiff Melanie Savoie**

31.    Plaintiff Melanie Savoie is an adult residing in Madison, Iowa. Ms. Savoie used her credit and debit cards on several occasions at the Hy-Vee gas pump locations in Burlington, Iowa and Fort Madison, Iowa between December 2018 and July 2019.  These locations were impacted by the Data Breach.

32.    Ms. Savoie became aware of the Data Breach after her bank, Midwest Bank, sent her notification on or around September 17, 2019 stating that her debit card was possibly compromised in a recently disclosed data breach. Ms. Savoie reached out to Midwest Bank for more information about the breach, and they confirmed that the breach occurred at Hy-Vee. She also received notice from Hy-Vee regarding the breach in or around early November 2019.

33.    On October 5, 2019, her credit card issued by Synchrony Bank—which she frequently uses at Hy-Vee locations—was fraudulently used for two different transactions, including a $100 charge on October 5, 2019 and a $74.28 charge on October 6, 2019 for gas purchases from an Exxon Mobil gas station in Detroit, Michigan.  Prior to this, Ms. Savoie had never experienced fraud on this credit card.

34.     As result of having been victimized by the Data Breach, she was required to spend approximately five hours dealing with the side effects of the breach.

35.    Ms. Savoie was exposed to actual fraud as a result of the Data Breach. Had Ms. Savoie known that Hy-Vee would not adequately protect her sensitive Card Information, she would not have made any purchases at Hy-Vee using her payment cards.

36.    As a result of Hy-Vee's failure to adequately safeguard Ms. Savoie's Card

Information, Ms. Savoie has been injured.

**Plaintiff Cheryl Ellingson**

37.    Plaintiff Cheryl Ellingson is an adult residing in Indianola, Iowa.  Ms. Ellingson used her debit card at a Hy-Vee-operated Wahlburgers restaurant located in West Des Moines, Iowa during the breach period.  This location was impacted by the Data Breach.

38.    Ms. Ellingson became aware of the Data Breach only after her online bank, Varo, sent her an email notification on August 27, 2019 stating that her debit card was possibly compromised in a recently disclosed data breach.  Ms. Ellingson immediately called Varo, who confirmed that the breach was the Hy-Vee Data Breach. To date, Hy-Vee has not provided direct notice about the Data Breach to Ms. Ellingson.

39.    As a result of the breach, Varo disabled Ms. Ellingson's debit card account effective August 27, 2019.  Varo said it would send a replacement card to arrive at Ms. Ellingson's address in 6-9 business days.  Because Ms. Ellingson uses an online bank, she is dependent on her debit card.  She asked Varo to send her new card via overnight mail since her money was tied up and she could not go to a brick and mortar location, but she was told that was not possible.

40.    Ms. Ellingson was ultimately cut off from access to her funds between August 27, 2019 and September 4, 2019, when her replacement card arrived in the mail.

41.    Ms. Ellingson was on the phone and messaging with her bank and Hy-Vee all day on August 28, 2019.  A Hy-Vee representative passed the responsibility for Ms. Ellingson's predicament off to her and her bank.

42.    As a result of having been victimized by the Data Breach, Ms. Ellingson was required to spend approximately one week dealing with the side-effects of the breach in the time

9

that she was without access to her funds. She also had to spend three to four hours changing her card information on all her accounts once she received her replacement card.

43.     Had Ms. Ellingson known that Hy-Vee would not adequately protect her sensitive Card Information, she would not have made a purchase at Hy-Vee using her payment card.

44.     As a result of Hy-Vee's failure to adequately safeguard Ms. Ellingson's Card Information, Ms. Ellingson has been injured.

**Plaintiff Angela Trang**

45.     Plaintiff Angela Trang is an adult residing in Coon Rapids, Minnesota. Ms. Trang used her debit card on numerous occasions at the Hy-Vee Market Grille, Starbucks, and Pay at the Pump locations in Brooklyn Park, Minnesota, all of which were affected by the Data Breach.

46.     On October 16, 2019, Ms. Trang became aware of the Data Breach after receiving notice from her bank, Affinity Plus Federal Credit Union, about her account having been affected by a recent data breach.

47.     On October 16, 2019, Ms. Trang's bank notified her about unauthorized use of her card at several Kroger stores in Ohio. Approximately $1,000 in total was taken for the charges that were successful, while a few others were declined by the bank. The fraudulent activity put her account in overdraft.  In response to the fraudulent activity, her bank cancelled her card and issued her a new one.  Prior to this, Ms. Trang had never experienced fraud on this debit card.

48.     It was not until November 6, 2019 that she received direct notice from Hy-Vee about the Data Breach (i.e., a letter dated October 31, 2019). The letter summarized the findings of Hy-Vee's two-month long investigation into the Data Breach, which was eventually publicized around the beginning of October 2019.

49.     Ms. Trang suffered actual fraud as a result of having been victimized by the Data

Breach, and she was required to spend approximately three hours dealing with the side effects of the breach. She has continued to monitor her account for fraudulent activity via Credit Karma and by setting up notifications from her bank.

50.     Had Ms. Trang known that Hy-Vee would not adequately protect her sensitive Card Information, she would not have made purchases at Hy-Vee using her payment card.

51.     As a result of Hy-Vee's failure to adequately safeguard Ms. Trang's information, Ms. Trang has been injured.

**Plaintiffs Harley and Mary Williams**

52.     Plaintiffs Harley and Mary Williams (h/w) are adults residing in Lenexa, Kansas. Mr. and Mrs. Williams are customers of Hy-Vee and regularly purchase gas from Hy-Vee's Lenexa, Kansas 87th Street location. Mr. and Mrs. Williams used their debit cards multiple times at Hy-Vee's Lenexa, Kansas location gas station during the breach period.  This location was impacted by the Data Breach.

53.     On or about August 16, 2019, Mr. and Mrs. Williams became aware of the Data Breach after checking their bank's mobile phone app and discovering approximately $700 in fraudulent transactions. After discovering the fraud, Mr. and Mrs. Williams notified their bank and filed a police report. Prior to this, Mr. and Mrs. Williams had never experienced fraud on their debit card account.

54.     Mr. and Mrs. Williams were without the use of their monies for approximately three weeks. Hy-Vee eventually provided notice about the breach to Mr. and Mrs. Williams via a letter dated October 31, 2019.

55.     As a result of the breach, Mr. and Mrs. Williams' bank was forced to issue them new debit cards.

56.     Mr. and Mrs. Williams were exposed to and experienced actual fraud, and as a result of having been victimized by the Data Breach, Mr. and Mrs. Williams were required to spend approximately 3-4 hours dealing with the aftermath of the breach.

57.     Had Mr. and Mrs. Williams known that Hy-Vee would not adequately protect their sensitive Card Information, they would not have made any purchases at Hy-Vee using their debit cards.

58.     As a result of Hy-Vee's failure to adequately safeguard Mr. and Mrs. Williams' Card Information, Mr. and Mrs. Williams have been injured.

**Plaintiff Gordon Grewing**

59.     Plaintiff Gordon Grewing is an adult residing in Kansas City, Missouri.  Mr. Grewing is a frequent Hy-Vee customer who has shopped at Hy-Vee for many years.  Mr. Grewing used his Community America Credit Union debit card on numerous occasions at Hy-Vee during the period of the Data Breach.  Specifically, Mr. Grewing made four debit card purchases at the Hy-Vee gas pump located at 207 NE Englewood Road, Kansas City, Missouri on the following dates: February 11, 2019 (purchase of $11.29); March 7, 2019 (purchase of $12.30); March 19, 2019 (purchase of $10.73); and March 24, 2019 (purchase of $24.42).  Each of these transactions occurred during the window of the breach and this location was impacted by the Data Breach.

60.     Also during the period of the breach, Mr. Grewing used his debit card to make a purchase on April 18, 2019 (purchase of $15.60) at the Hy-Vee Market Grille at 5330 NW 64th St., Kansas City, Missouri.  This location was also impacted by the Data Breach.

61.     On July 20, 2019, a fraudulent charge of $7.81 appeared on Mr. Grewing's Community America account, followed by a second fraudulent charge in the amount of $25.94 on July 21, 2019.  Prior to this, Mr. Grewing had never experienced fraud on his debit card.

62.     On July 27, 2019, Mr. Grewing became aware of these fraudulent charges.   He drove the 8.4 miles round trip to his bank, disputed the charges, and canceled his debit card.

63.     In September 2019, after hearing a news story about the Data Breach, Mr. Grewing purchased a TransUnion Credit Monitoring Plan for $9.95 per month.

64.     It was not until October 31, 2019 that he received direct notice from Hy-Vee about the Data Breach. The letter summarized the findings of Hy-Vee's two-month long investigation into the Data Breach.  Missing from the letter was any offer by Hy-Vee to provide identity theft protection or credit fraud monitoring.  Instead, Hy-Vee simply stated that it is "always advisable" to review account statements for fraudulent charges.

65.     Mr. Grewing suffered actual fraud as a result of having been victimized by the Data Breach, and he was required to spend approximately five hours dealing with the side effects of the breach.

66.     Had Mr. Grewing known that Hy-Vee would not adequately protect his sensitive Card Information, he would not have made purchases at Hy-Vee using his payment card.

67.     As a result of Hy-Vee's failure to adequately safeguard Mr. Grewing's information, he has been injured.

**Plaintiff Patricia Davis**

68.     Plaintiff Patricia Davis is an adult residing in Dane County, Wisconsin. Ms. Davis frequently uses her debit card from her bank, Chase Bank, to make purchases at the Hy-Vee Market Grille location at 2920 Fitchrona Road, Fitchburg, Wisconsin.  This location was affected by the Data Breach.

69.     On June 25, 2019, Ms. Davis purchased take-away food items from the Fitchburg Hy-Vee Market Grille location using her Chase Bank debit card.

13

70.     After the Data Breach, Ms. Davis' card was cancelled.  Ms. Davis spent time updating automatic payment card information after her card was replaced.

71.     Had Ms. Davis known that Hy-Vee would not adequately protect her sensitive Card Information, she would not have made purchases at Hy-Vee using her payment card.

72.     As a result of Hy-Vee's failure to adequately safeguard Ms. Davis's information, Ms. Davis suffered lost time and was injured.

**Plaintiff Melissa Ward**

73.     Plaintiff Melissa Ward is an adult residing in Johnson County, Kansas. Ms. Ward frequently used her debit card to make purchases at the Hy-Vee location at 9545 Antioch Road, Overland Park, Kansas.  This location was affected by the Data Breach.

74.     On April 10, 2019 and May 6, 2019, Ms. Ward used her debit card to pay at the pump at the Hy-Vee location at 9545 Antioch Road, Overland Park, Kansas.

75.     Ms. Ward has not received any direct notice of the breach from Hy-Vee or her bank.

76.     As a result of the breach, Ms. Ward has spent additional time monitoring her accounts.

77.     Had Ms. Ward known that Hy-Vee would not adequately protect her sensitive Card Information, she would not have made purchases at Hy-Vee using her payment card.

78.     As a result of Hy-Vee's failure to adequately safeguard Ms. Ward's information, Ms. Ward suffered lost time and was injured.

**Defendant Hy-Vee, Inc**

79.     Defendant Hy-Vee, Inc. is an Iowa corporation and maintains its principal place of business at 5820 Westown Parkway, West Des Moines, Iowa 50266.

14

80.     Hy-Vee is one of the largest privately owned corporations in the United States. It operates a large chain of supermarket locations, fuel pumps, convenience stores, gas stations, and coffee shops throughout the Midwest.

81.     Hy-Vee owns over 240 retail stores in eight Midwestern states, including Iowa, Illinois, Kansas, Minnesota, Missouri, Nebraska, South Dakota, and Wisconsin.

82.     Many Hy-Vee locations are full-service supermarkets, offering bakeries, catering, florists, dine-in and carryout food service, wine and spirits, pharmacies, health clinics, HealthMarkets (natural and organic products) and coffee kiosks. The company also maintains fuel stations with convenience stores, fitness centers, and full-service restaurants at some of its properties.  Furthermore, Hy-Vee owns three Wahlburgers locations, including one in the Mall of America in Bloomington, Minnesota; a location in West Des Moines, Iowa; and a location in Olathe, Kansas.

## JURISDICTION AND VENUE

83.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the class are citizens of states different than Hy-Vee. *See* 28 U.S.C. § 1332(d)(2)(A). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

84.     This Court has personal jurisdiction over Hy-Vee. Hy-Vee has sufficient minimum contacts with the state of Illinois, including the operation of numerous Hy-Vee locations and conducting substantial business within this judicial district.  Hy-Vee intentionally avails itself of the consumers and markets within the state of Illinois through the promotion, marketing, and sale of its products and services.

15

85.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because, as noted above, Hy-Vee conducts substantial business in this district.  A substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## FACTUAL ALLEGATIONS

### The Hy-Vee Data Breach

86.     On or about August 14, 2019, Hy-Vee posted a "Notice of Payment Card Data Incident" alert on its corporate website providing as follows:

> Hy-Vee takes the security of payment card data very seriously. We want to make customers aware of an investigation we are conducting into a security incident involving our payment processing systems that is focused on transactions at some Hy-Vee fuel pumps, drive-thru coffee shops, and restaurants, as well as to provide information on the measures we have taken in response and steps customers may consider taking as well.

> After recently detecting unauthorized activity on some of our payment processing systems, we immediately began an investigation with the help of leading cybersecurity firms. We also notified federal law enforcement and the payment card networks. We believe the actions we have taken have stopped the unauthorized activity on our payment processing systems. Our investigation is focused on card transactions at our fuel pumps, drive-thru coffee shops, and restaurants (which include our Market Grilles, Market Grille Expresses and the Wahlburgers locations that Hy-Vee owns and operates). These locations have different point-of-sale systems than those located at our grocery stores, drugstores and inside our convenience stores, *which utilize point-to-point encryption technology for processing payment card transactions*. This encryption technology protects card data by making it unreadable. Based on our preliminary investigation, we believe payment card transactions that were swiped or inserted on these systems, which are utilized at our front-end checkout lanes, pharmacies, customer service counters, wine & spirits locations, floral departments, clinics and all other food service areas, as well as transactions processed through Aisles Online, are not involved.

> Because the investigation is in its earliest stages, we do not have any additional details to provide at this time. We will provide notification to our customers as we get further clarity about the specific timeframes and locations that may have been involved.

> It is always advisable to closely monitor your payment card statements for any unauthorized activity. If you see an unauthorized charge, immediately notify the financial institution that issued the card because cardholders are not generally

responsible for unauthorized charges reported in a timely manner. The phone number to call is typically located on the back of the payment card.[9]

87.    As the Notice makes clear, Hy-Vee failed to utilize card encryption technology on the point-of-sale terminals located at its fuel pumps, coffee shops, and restaurants (i.e., the locations impacted by the breach).  Payment card encryption is a widely-used security measures that drastically reduces the chances of sensitive payment card information being subject to theft. This technology secures the terminal where the card is scanned, and the transmission of information between that terminal and its system's back end.  Encryption typically works by masking card data using an algorithm, scrambling card information to make it unreadable without the proper key. This security measure is end-to-end encryption, as the data is kept secure from the point of purchase (in store or online) (i.e., one end) until it reaches the intended destination (i.e., the other end).

88.    The Notice also confirms that Hy-Vee did in fact utilize encryption technology at its grocery store checkout lanes, pharmacies, and convenience stores, and does not believe these locations were impacted as they have point of sale systems that rely on security technology designed to defeat card-skimming malware.[10]

89.    It is unclear why Hy-Vee decided to use point-to-point encryption technology at its grocery stores, but not for its fuel pump, coffee shop, and restaurant locations that were impacted by the Data Breach.

90.    According to data security leader Krebs on Security, credit card and debit card information for more than 5 million of Hy-Vee's customers is now being sold on the dark web— an underground part of the internet accessed by an anonymizing browser and that is not indexed

---

[9] HY-VEE, *Notice of Data Breach*, *supra* note 1 (emphasis added).
[10] *See id*.; KREBSONSECURITY, *supra* note 7.

by search engines, where rampant illegal commerce occurs (e.g., buying and selling stolen card, subscription, and account information/credentials; buying and selling drugs, guns, counterfeit money). The card data stolen during the Data Breach is reportedly being offered for sale on a well-known website called Joker's Stash, where the cache of stolen, for-purchase payment card information is listed as the "Solar Energy" breach.[11]

91.     The card account records sold on Joker's Stash, known as "dumps," are being sold for prices ranging from $17 to $35 apiece. "Buyers will receive a text file that includes all of their dumps. Those individual dump records—when encoded onto a new magnetic stripe on virtually anything the size of a credit card—can be used to purchase stolen merchandise in big box stores."[12]

92.     Although Hy-Vee did not initially confirm whether the Data Breach exposed credit and debit card numbers, cardholder names, and card expiration dates, the cache of data available for sale on Joker's Stash made clear that this level of information involving customers' credit and debit card information was certainly stolen from Hy-Vee as part of the Data Breach.

93.     After nearly two months of delay, on October 3, 2019, Hy-Vee published the Report on its website announcing additional details about the Data Breach.[13]

94.     In the Report, Hy-Vee disclosed that it detected the Data Breach on July 29, 2019, which was carried out with the use of "malware designed to access payment card data from cards used on point-of-sale ("POS") devices at certain Hy-Vee fuel pumps, coffee shops, and restaurants," which Hy-Vee revealed includes Hy-Vee Market Grilles, some Starbucks coffee

---

[11] KREBSONSECURITY, *supra* note 7.
[12] *Id.*
[13] HY-VEE, *Hy-Vee Reports Findings from Investigation of Payment Card Data Incident*, *supra* note 4.

shops, Hy-Vee Market Grille Express locations, and the Wahlburgers locations that Hy-Vee owns

and operates, as well as the cafeteria at Hy-Vee's West Des Moines corporate office.[14]

  95. According to the Report:

> The malware searched for track data (which sometimes has the cardholder name in addition to card number, expiration date, and internal verification code) read from a payment card as it was being routed through the POS device. However, for some locations, the malware was not present on all POS devices at the location, and it appears that the malware did not copy data from all of the payment cards used during the period that it was present on a given POS device.[15]

  96. The Report also revealed that there were different timeframes for the Data Breach

at Hy-Vee's different locations.  Hy-Vee has identified the following:

> The specific timeframes when data from cards used at these locations involved may have been accessed vary by location over the general timeframe beginning December 14, 2018, to July 29, 2019 for fuel pumps and beginning January 15, 2019, to July 29, 2019, for restaurants and drive-thru coffee shops. There are six locations where access to card data may have started as early as November 9, 2018, and one location where access to card data may have continued through August 2, 2019. A list of the locations involved and specific timeframes are available below.[16]

  97. In conjunction with publishing the Report, Hy-Vee has also posted an online tool

allow customers to determine which location was impacted and during what timeframe.[17]

  98. As is typical with payment card data breaches, the Data Breach was a result of

malware that criminals routinely use in payment card breaches.  According to KrebsonSecurity,

> . . . typically, such breaches occur when cybercriminals manage to remotely install malicious software on a retailer's card-processing systems. This type of point-of-sale malware is capable of copying data stored on a credit or debit card's magnetic stripe when those cards are swiped at compromised payment terminals. This data can then be used to create counterfeit copies of the cards.[18]

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *See id.*
[18] KREBSONSECURITY, *supra* note 7.

99.     Furthermore, neither the Notice, the Report, nor any statements issued by Hy-Vee give any indication as to the *actual* magnitude of the Data Breach, including confirmation of the number of stores impacted or the actual number of customers and cards affected.

100.     Despite claiming to provide "additional details" through the Report, the reality is that Hy-Vee has provided very limited details surrounding the breach that would allow consumers to protect themselves against payment card fraud and identity theft.

101.     Although the Report indicates Hy-Vee "also notified federal law enforcement and the payment card networks,"[19] it is apparent that Hy-Vee's October 3, 2019 Incident Notification letter[20] to the Iowa Attorney General does not provide the full details of the Data Breach.  Under Iowa law,[21] any data breach that affects at least 500 Iowa residents requires written notification to the Attorney General's Consumer Protection Division Director within *five business days* after notifying affected people.  IOWA CODE § 715C.2.  It is unclear whether Hy-Vee acted timely in providing notice to the Iowa Attorney General, and whether it has provided all impacted victims with notice of the Data Breach.

**<u>Industry Standards and the Protection of Customer Card Information</u>**

102.     It is well known in the retail industry that sensitive Card Information is valuable and frequently targeted by hackers.  In a recent article, Business Insider noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers.  . . . Many of them were caused by flaws in payment systems either online or in stores."[22]

---

[19] *Id.*
[20] https://www.iowaattorneygeneral.gov/media/cms/10319_HyVee__IA_07B5D907E6723.pdf (last visited Dec. 30, 2019).
[21] https://www.iowaattorneygeneral.gov/for-consumers/security-breach-notifications (last visited Dec. 30, 2019).
[22] Dennis Green and Mary Hanbury, "If you bought anything from these 11 companies in the last year, your data may have been stolen," BUSINESS INSIDER, available at

103.    Despite the known risk of POS malware intrusions and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Hy-Vee failed to take reasonable steps to adequately protect its computer systems and payment card environment from being breached, and then failed to detect the Data Breach for many months.

104.    Hy-Vee is, and at all relevant times has been, aware that the Card Information it maintains as a result of purchases made at its locations is highly sensitive and could be used for nefarious purposes by third parties.  Indeed, it acknowledged in the Notice that it used heightened data security technology (encryption) at its grocery store, pharmacy, and convenience store locations, but not at the locations that were impacted by the Data Breach.

105.    Its decision to utilize encryption at some of its other non-impacted locations, coupled with its explicit statements in its Privacy notice, makes clear that Hy-Vee recognized the importance of adequately safeguarding its customers' sensitive Card Information yet failed to take the steps necessary to protect that sensitive data. On its website, Hy-Vee's Privacy notice provides the following:

**Privacy**

**Our Commitment to Privacy**

Hy-Vee, Inc. ("Hy-Vee", "we", "our" or "us") is committed to respecting and protecting our customers' privacy. . . . We take the issue of privacy very seriously and value the trust you place in us each time you visit our stores and use the services we provide.[23]

---

https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1 (last visited Dec. 30, 2019).
[23] HY-VEE, *Privacy*, available at https://www.hy-vee.com/corporate/policy/privacy/ (last visited Dec. 30, 2019).

106.    Hy-Vee is thus aware of the importance of safeguarding its customers' Card Information from the foreseeable consequences that would occur if its data security systems and computer servers were breached.

107.    Financial institutions and credit card processing companies have issued rules and standards governing the basic measures that merchants must take to ensure that consumers' valuable data is protected.

108.    The Payment Card Industry Data Security Standard ("PCI DSS") is a list of twelve information security requirements that were promulgated by the Payment Card Industry Security Standards Council. The PCI DSS list applies to all organizations and environments where cardholder data is stored, processed, or transmitted, and requires merchants like Hy-Vee to protect cardholder data, ensure the maintenance of vulnerability management programs, implement strong access control measures, regularly monitor and test networks, and ensure the maintenance of information security policies.

109.    The twelve requirements of the PCI DSS are: (1) Install and maintain a firewall configuration to protect cardholder data; (2) Do not use vendor-supplied defaults for system passwords and other security parameters; (3) Protect stored cardholder data; (4) Encrypt transmission of cardholder data across open, public networks; (5) Protect all systems against malware and regularly update anti-virus software or programs; (6) Develop and maintain secure systems and applications; (7) Restrict access to cardholder data by business need to know; (8) Identify and authenticate access to system components; (9) Restrict physical access to cardholder data; (10) Track and monitor all access to network resources and cardholder data; (11) Regularly

test security systems and processes; (12) Maintain a policy that addresses information security for all personnel.[24]

110.    Furthermore, PCI DSS sets forth detailed and comprehensive requirements that must be followed to meet each of the twelve mandates.

111.    Hy-Vee was, at all material times, fully aware of its data protection obligations in light of its participation in the payment card processing networks and its daily collection and transmission of thousands of sets of Card Information.

112.    Because Hy-Vee accepted payment cards containing sensitive financial information, it knew that its customers were entitled to and did in fact rely on it to keep that sensitive information secure from would-be data thieves in accordance with the PCI DSS requirements.

113.    Additionally, according to the Federal Trade Commission ("FTC"), the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act of 1914 ("FTC Act"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 248 (3d Cir. 2015); *see also See Consumer Data Protection: Hearing Before the Subcomm. on Commerce, Mfg. & Trade of the H. Comm. on Energy & Commerce*, 2011 WL 2358081, at *6 (June 15, 2011) (statement of Edith Ramirez, Comm'r, FTC) ("[T]he Commission enforces the FTC Act's proscription against unfair . . . acts . . . in cases where a business['s] . . . failure to employ reasonable security measures causes or is likely to cause substantial consumer

---

[24] PCI SECURITY STANDARDS COUNCIL, *PCI DSS Quick Reference Guide: Understanding the Payment Card Industry Data Security Standard Version 3.2*, at 9 (May 2016), available at https://www.pcisecuritystandards.org/documents/PCIDSS_QRGv3_2.pdf?agreement=true&time =1506536983345 (last visited Dec. 30, 2019).

injury."); *Data Theft Issues: Hearing Before the Subcomm. on Commerce, Mfg. & Trade of the H. Comm. on Energy & Commerce*, 2011 WL 1971214, at *7 (May 4, 2011) (statement of David C. Vladeck, Director, FTC Bureau of Consumer Protection) (same).

114.    In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

115.    The FTC has also published a document, entitled "Protecting Personal Information: A Guide for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[25]

116.    The FTC has issued orders against businesses that failed to employ reasonable measures to secure payment card data. These orders provide further guidance to businesses with regards to their data security obligations.

---

[25] FEDERAL TRADE COMMISSION, *Protecting Personal Information: A Guide for Business* (Nov. 2011), https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last visited Dec. 16, 2019).

**Hy-Vee Disregarded Industry Standards for Customer Data Security**

117.    As noted above, Hy-Vee should have been and, based upon its acknowledged use of encryption technology at certain locations, was aware of the need to have adequate data security systems in place.

118.    Despite this, Hy-Vee failed to upgrade and maintain its data security systems in a meaningful way in order prevent data breaches. Hy-Vee's security flaws run afoul of industry best practices and standards. More specifically, the security practices in place at Hy-Vee are in stark contrast and directly conflict with the PCI DSS core security standards.

119.    Had Hy-Vee maintained its information technology systems ("IT systems"), adequately protected them, and had adequate security safeguards in place, it could have prevented the Data Breach.

120.    As a result of industry warnings, awareness of industry best practices, the PCI DSS, and numerous well-documented restaurant and retail (and other) data breaches, Hy-Vee was alerted to the risk associated with failing to ensure that its IT systems were adequately secured.

121.    Hy-Vee was not only aware of the threat of data breaches, generally, but was aware of the specific danger of malware infiltration. Malware has been used recently to infiltrate large retailers such as, *inter alia*, Target, GameStop, Chipotle, Jason's Deli, Whole Foods, Sally Beauty, Neiman Marcus, Michaels Stores, and Supervalu. As a result, Hy-Vee was aware that malware is a real threat and is a primary tool of infiltration used by hackers seeking to carry out payment card breaches.

122.    In addition to the publicly announced data breaches described above (among many others), Hy-Vee knew or should have known of additional warnings regarding malware infiltrations from the U.S. Computer Emergency Readiness Team, a government unit within the

Department of Homeland Security, which alerted retailers to the threat of malware on July 31, 2014, and issued a guide for retailers on protecting against the threat of malware, which was updated on August 27, 2014.[26]

123.     Despite the fact that Hy-Vee was on notice of the very real possibility of consumer data theft associated with its security practices and that Hy-Vee knew or should have known about the elementary infirmities associated with its security systems, it still failed to make necessary changes to its security practices and protocols, and permitted massive malware intrusions to occur for months on end.

124.     Hy-Vee, at all times relevant to this action, had a duty to Plaintiffs and members of the class to: (a) properly secure Card Information submitted to or collected at Hy-Vee's locations and on Hy-Vee's internal networks; (b) encrypt Card Information using industry standard methods; (c) use available technology to defend its systems from well-known methods of invasion; (d) act reasonably to prevent the foreseeable harms to Plaintiffs and class members, which would naturally result from Card Information theft; and (e) promptly notify customers when Hy-Vee became aware of the potential that customers' Card Information may have been compromised.

125.     Hy-Vee permitted customers' Card Information to be compromised by failing to take reasonable steps against an obvious threat.

126.     In addition, leading up to the Data Breach, during the breach itself, and during the investigation that followed, Hy-Vee failed to follow the guidelines set forth by the FTC.

127.     Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data

---

[26] *See* U.S. COMPUTER EMERGENCY READINESS TEAM, *Alert (TA14-212A): Backoff Point-of-Sale Malware* (July 31, 2014) (revised Sept. 30, 2016), https://www.us-cert.gov/ncas/alerts/TA14-212A (last visited Dec. 30, 2019).

was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[27]

128.    The Data Breach is particularly egregious and its data security failures are particularly alarming given that the breach reportedly resulted in at least 5.3 million cards being stolen and illegally placed for sale on the dark web, and because the Data Breach was permitted to occur for over 6 months at some locations and over 7 months at others (with a handful of locations experiencing the breach for even longer).  Clearly, had Hy-Vee utilized adequate data security and data breach precautions, the window of the Data Breach would have been significantly mitigated, and the level of impact could have been reduced, had the breach been permitted to happen at all in the first place.

129.    One commentator in the data security industry noted as to a previous, unrelated data breach:

> . . . *2 million cards on sale on the dark web would indicate this was a very successful project for the cybercriminals involved, and one which is likely to be incredibly profitable*. POS-malware breaches happen in the US with alarming regularity, and businesses should be well aware that they need to not only protect their central networks but also need to account for physical locations as well. . . . Moving forward, financial institutions should consider implementing a system of two-factor authentication in conjunction with a passive biometric solutions in order to mitigate the entirely avoidable outcomes of security incidents such as this.[28]

---

[27] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 26, 2017), http://www.reuters.com/article/us-chipotle-cyber-idUSKBN18M2BY (last visited Dec. 30, 2019).

[28] "Cyber Attack on Earl Enterprises (Planet Hollywood)," isBuzznews (Apr. 1, 2019), available at https://www.informationsecuritybuzz.com/expert-comments/cyber-attack-on-earl-enterprises-planet-hollywood/ (last visited Dec. 30, 2019).

130.    With more than 5.3 million cards reportedly stolen in the Hy-Vee breach, this clearly marks a highly successful outing for criminals and a large failure on Hy-Vee's part as to data security.

131.    Specifically, with respect to the Hy-Vee Data Breach, another commentator—Morey Haber, the Chief Technology Officer and Chief Information Security Officer at cyber security company Beyond Trust—noted that

> The attack vectors used against Hy-Vee are **quite typical** in the cyber-security landscape.  The breach is not uncommon compared to other environments that have been compromised, including using things like credit card skimmers, common passwords, or data bases in the back-end . . . .  The consumer is really at the mercy of the company to have proper security IT. Whether they've protected their data bases or their website, their gas pumps from skimmers, it's really **up to the business to have proper security** . . . .[29]

132.    Because payment card data breaches involving malware are so common, and given the high level of data security measures available to companies that take customer payment information in, like Hy-Vee, there is no reason why Hy-Vee could not have adequately protected its systems and servers from the Data Breach.

133.    As a result of the events detailed herein, Plaintiffs and class members suffered actual, palpable fraud and losses resulting from the Data Breach, including: financial losses related to the purchases made at Hy-Vee that Plaintiffs and class members would not have made had they known of Hy-Vee's careless approach to cybersecurity; lost control over the value of personal information; unreimbursed losses relating to fraudulent charges; losses and fees relating to exceeding credit and debit card limits, balances, and bounced transactions; harm resulting from

---

[29] Marcus Espinoza, *What does the Hy-Vee data breach means [sic] for customers?*, KHQA (Oct. 22, 2019), https://khqa.com/news/local/what-does-the-hy-vee-data-breach-means-for-customers (last visited Dec. 30, 2019) (emphasis added).

damaged credit scores and information; loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Card Information.

134.   These costs and expenses will continue to accrue as additional fraud alerts and fraudulent charges occur and are discovered.

135.   Furthermore, the Card Information stolen from Hy-Vee's locations can be used to drain debit card-linked bank accounts, make "clone" credit cards, or to buy items on certain less-secure websites.

136.   To date, and as made clear in the Report, Hy-Vee is not taking any real measures to assist affected customers.  In the first place, it has bled out information about the Data Breach at its own, very slow pace over the course numerous months, leaving victims of the breach in the dark and vulnerable to continued fraud.  All that Hy-Vee has done to assist impacted customers is to offer this sage advice: "It is always advisable to review your payment card statements for any unauthorized activity.  You should immediately report any unauthorized charges to your card issuer . . . ."[30]

137.   These "suggestions" make it clear that Hy-Vee is shifting the responsibility for the Data Breach to consumers, rather than taking real steps to assist its customers in protecting against the fraud to which Hy-Vee exposed them.  Upon information and belief, to date, Hy-Vee is not offering credit monitoring or identity theft insurance to customers impacted by the Data Breach.

138.   Hy-Vee's failure to adequately protect its customers' Card Information has resulted in consumers having to undertake various errands (e.g., obtaining credit monitoring, checking

---

[30] HY-VEE, *Hy-Vee Reports Findings from Investigation of Payment Card Data Incident*, *supra* note 4.

credit reports, etc.) that require extensive amounts of time, calls, and, for many of the credit and

fraud protection services, payment of their own money.  At the same time, Hy-Vee is doing nothing

to assist those affected by the Data Breach and has withheld important details about the Data

Breach as it conducts its investigation. Instead, Hy-Vee is putting the burden on the consumer to

discover possible fraudulent transactions.

## CLASS ALLEGATIONS

139.    Plaintiffs bring this action individually and on behalf of the following classes and

subclasses (collectively "the class" or "the classes") pursuant to Fed. R. Civ. P. 23:

**National Class**

All persons who used a credit card or debit card at a Compromised Hy-Vee
Location identified in Exhibit A during the Relevant Date Range for that location.

140.    In the alternative to the National Class, Plaintiffs bring this action

individually and on behalf of the following state subclasses:

**Illinois Class**

All persons who used a credit card or debit card at a Compromised Hy-Vee Location in
Illinois identified in Exhibit A during the Relevant Date Range for that location.

**Iowa Class**

All persons who used a credit card or debit card at a Compromised Hy-Vee Location in
Iowa identified in Exhibit A during the Relevant Date Range for that location.

**Kansas Class**

All persons who used a credit card or debit card at a Compromised Hy-Vee Location in
Kansas identified in Exhibit A during the Relevant Date Range for that location.

**Minnesota Class**

All persons who used a credit card or debit card at a Compromised Hy-Vee Location in
Minnesota identified in Exhibit A during the Relevant Date Range for that location.

**Missouri Class**

All persons who used a credit card or debit card at a Compromised Hy-Vee Location in Missouri identified in Exhibit A during the Relevant Date Range for that location.

**Wisconsin Class**

All persons who used a credit card or debit card at a Compromised Hy-Vee Location in Wisconsin identified in Exhibit A during the Relevant Date Range for that location.

141.    Excluded from the classes are Hy-Vee, its affiliates, officers, directors, assigns, successors, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change, or expand the definitions of the classes based on discovery and further investigation.

142.    **Numerosity**: While the precise number of class members has not yet been determined, members of the classes are so numerous that their individual joinder is impracticable, as the proposed classes appear to include approximately 5.3 million members who are geographically dispersed. Upon information and belief, the Data Breach affected millions of consumers across the United States.

143.    **Typicality**: Plaintiffs' claims are typical of class members' claims.  Plaintiffs and all class members were injured through Hy-Vee's uniform misconduct. The same event and conduct that gave rise to Plaintiffs' claims are identical to those that give rise to the claims of every other class member because Plaintiffs and each class member had their sensitive data and Card Information compromised in the same way by the same conduct by Hy-Vee.

144.    **Adequacy**: Plaintiffs are adequate representatives of the classes because Plaintiffs' interests do not conflict with the interests of the classes that they seek to represent; Plaintiffs have retained counsel that are competent and highly experienced in class action litigation, including data breach cases in particular; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the classes will be fairly and adequately protected by Plaintiffs and their counsel.

145. **Superiority**: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the class members. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for class members individually to effectively redress Hy-Vee's wrongdoing. Even if class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

146. **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to Plaintiffs and all class members. These questions predominate over the questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

• whether Hy-Vee engaged in the wrongful conduct alleged herein;

• whether Hy-Vee owed duties to Plaintiffs and members of the class to protect their Card Information and to provide timely and accurate notice of the Data Breach to Plaintiffs and the class, and whether it breached these duties;

• whether Hy-Vee violated federal and state laws as a result of the Data Breach;

• whether Hy-Vee knew or should have known that its computer and network systems were vulnerable to attacks from hackers and cyber-criminals;

• whether Hy-Vee's conduct was the proximate cause of the breach of its computer and

network systems resulting in the theft of customers' Card Information;

- whether Hy-Vee wrongfully failed to inform Plaintiffs and members of the class that it did not maintain computer software and other security procedures and precautions sufficient to reasonably safeguard consumers' sensitive financial and personal data;

- whether Hy-Vee failed to inform Plaintiffs and the class of the Data Breach in a timely and accurate manner;

- whether Hy-Vee has taken adequate preventive and precautionary measures to ensure the Plaintiffs and class members will not experience further harm;

- whether Plaintiffs and members of the class suffered injury as a proximate result of Hy-Vee's conduct or failure to act; and

- whether Plaintiffs and the class are entitled to recover damages, equitable relief, and other relief, and the extent of the remedies that should be afforded to Plaintiffs and the class.

147.    Hy-Vee has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the class, thereby making appropriate final injunctive relief and declaratory relief with respect to the class as a whole.

148.    Given that Hy-Vee has engaged in a common course of conduct as to Plaintiffs and the class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

149.    The class is defined in terms of objective characteristics and common transactional facts; namely, the exposure of sensitive Card Information to cyber criminals due to Hy-Vee's failure to protect this information, adequately warn the class that it lacked adequate data security measures, and failure to adequately warn that it was breached. Class membership will be readily

33

ascertainable from Hy-Vee's business records, and/or from records of third parties.

150.    Plaintiffs reserve the right to revise the above class definitions and any of the averments of fact herein based on facts adduced in discovery.

## COUNT I
## NEGLIGENCE
### (On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Each State Class)

151.    Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

152.    Hy-Vee collected Card Information from Plaintiffs and class members in exchange for its sale of food and other services at its impacted locations.

153.    Hy-Vee owed a duty to Plaintiffs and the class to maintain confidentiality and to exercise reasonable care in safeguarding and protecting their financial and personal information in Hy-Vee's possession from being compromised by unauthorized persons. This duty included, among other things, designing, maintaining, and testing Hy-Vee's networks and data security systems to ensure that Plaintiffs' and class members' financial and personal information in Hy-Vee's possession was adequately protected in the process of collection and following collection while stored on Hy-Vee's systems.

154.    Hy-Vee further owed a duty to Plaintiffs and class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

155.    Hy-Vee owed a duty to Plaintiffs and class members to provide security consistent with industry standards and requirements and to ensure that its computer systems and networks—and the personnel responsible for them—adequately protected the financial and personal

information of Plaintiffs and class members whose confidential data Hy-Vee obtained and maintained.

156.    Hy-Vee knew, or should have known, of the risks inherent in collecting and storing Plaintiffs' and class members' financial and personal information and the critical importance of providing adequate security for that information.

157.    Hy-Vee's conduct created a foreseeable risk of harm to Plaintiffs and class members. This conduct included but was not limited to Hy-Vee's failure to take the steps and opportunities to prevent and stop the Data Breach as described herein. Hy-Vee's conduct also included its decision not to comply with industry standards for the safekeeping and maintenance of the financial and personal information of Plaintiffs and class members.

158.    Hy-Vee knew or should have known that it had inadequate computer systems and data security practices to safeguard such information, and Hy-Vee knew or should have known that hackers would attempt or were attempting to access the personal financial information in databases such as Hy-Vee's.

159.    Hy-Vee breached the duties it owed to Plaintiffs and members of the class by failing to exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the medical, financial, and personal information of Plaintiffs and members of the class, as identified above. This breach was a proximate cause of injuries and damages suffered by Plaintiffs and class members.

160.    As a direct and proximate result of Hy-Vee's negligent conduct, Plaintiffs and class members have been injured and are entitled to damages in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE *PER SE*
### (On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Each State Class)

161.    Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

162.    Pursuant to the FTC Act, 15 U.S.C. § 45, Hy-Vee had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and class members' personal information.

163.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Hy-Vee, of failing to use reasonable measures to protect Card Information. The FTC publications and orders described above also form part of the basis of Hy-Vee's duty to protect Plaintiffs' and class members' sensitive information.

164.    Hy-Vee violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Card Information and not complying with applicable industry standards, including PCI DSS, as described in detail herein. Hy-Vee's conduct was particularly unreasonable given the nature and amount of Card Information it collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to consumers and financial institutions.

165.    The harm that has occurred is the type of harm the FTC Act (and similar state statutes) is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the class.

36

166.    Hy-Vee had a duty to Plaintiffs and class members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and class members' personal information.

167.    Hy-Vee breached its duties to Plaintiffs and class members under the FTC Act (and similar state statutes), by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and class members' financial and personal information.

168.    Hy-Vee's violation of Section 5 of the FTC Act (and similar state statutes) and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

169.    But for Hy-Vee's wrongful and negligent breach of its duties owed to Plaintiffs and class members, they would not have been injured.

170.    The injury and harm suffered by Plaintiffs and class members was the reasonably foreseeable result of Hy-Vee's breach of its duties. Hy-Vee knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiffs and class members to suffer the foreseeable harms associated with the exposure of their Card Information.

171.    Had Plaintiffs and class members known that Hy-Vee did and does not adequately protect customer Card Information, they would not have made purchases at Hy-Vee's locations.

172.    As a direct and proximate result of Hy-Vee's negligence *per se*, Plaintiffs and class members have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the purchases made at Hy-Vee that Plaintiffs and class members would not have made had they known of Hy-Vee's careless approach to cyber security; lost control over the value of personal information; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit

and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Card Information, entitling them to damages in an amount to be proven at trial.

<u>COUNT III</u>
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Each State Class)**

173.    Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

174.    Plaintiffs and class members who made purchases at Hy-Vee's locations during the period in which the Data Breach occurred had implied contracts with Hy-Vee.

175.    Specifically, Plaintiffs and class members paid money to Hy-Vee and, in connection with those transactions, provided Hy-Vee with their Card Information. In exchange, Hy-Vee agreed, among other things: (1) to provide food, gasoline, and food services to Plaintiffs and class members at its various locations; (2) to take reasonable measures to protect the security and confidentiality of Plaintiff's and class members' Card Information; and (3) to protect Plaintiffs' and class members' personal information in compliance with federal and state laws and regulations and industry standards.

176.    Protection of personal information is a material term of the implied contracts between Plaintiffs and class members, on the one hand, and Hy-Vee, on the other hand.  Indeed, as set forth, *supra*, Hy-Vee recognized the importance of data security and privacy of customers' sensitive financial information in the privacy policy. Had Plaintiffs and class members known that Hy-Vee would not adequately protect customer Card Information, they would not have made purchases at Hy-Vee's locations.

177.     Hy-Vee did not satisfy its promises and obligations to Plaintiffs and class members under the implied contracts because it did not take reasonable measures to keep their personal information secure and confidential and did not comply with the applicable laws, regulations, and industry standards.

178.     Hy-Vee materially breached its implied contracts with Plaintiffs and class members by failing to implement adequate payment card and Card Information security measures.

179.     Plaintiffs and class members fully performed their obligations under their implied contracts with Hy-Vee.

180.     Hy-Vee's failure to satisfy its obligations led directly to the successful intrusion of Hy-Vee's computer servers and stored Card Information and led directly to unauthorized parties access and exfiltration of Plaintiffs' and class members' Card Information.

181.     Hy-Vee breached these implied contracts as a result of its failure to implement security measures.

182.     Also, as a result of Hy-Vee's failure to implement the security measures, Plaintiffs and class members have suffered actual damages resulting from the theft of their personal information and remain at imminent risk of suffering additional damages in the future.

183.     Accordingly, Plaintiffs and class members have been injured as a proximate result of Hy-Vee's breaches of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACTS TO WHICH PLAINTIFFS AND CLASS
## MEMBERS WERE INTENDED THIRD-PARTY BENEFICIARIES
### (On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Each State Class)

184.     Plaintiffs incorporate all foregoing substantive allegations as if fully set forth herein.

185.    Upon information and belief, Plaintiffs and class members are intended third-party beneficiaries of contracts entered into between Hy-Vee and various entities including, without limitation, (i) contracts between Hy-Vee and its merchant customers to process credit card and/or debit card transactions, (ii) contracts between Hy-Vee and Visa and/or MasterCard (including their operating regulations), and (iii) contracts between Hy-Vee and its acquiring banks.

186.    Upon further information and belief, these contracts and regulations require, *inter alia*, that Hy-Vee take appropriate steps to safeguard the sensitive financial information of Hy-Vee's customers, like Plaintiffs and class members.

187.    Plaintiffs and the class members are intended third party beneficiaries of these contracts and regulations. Under the circumstances, recognition of a right to performance by Plaintiffs and the class members is appropriate to effectuate the intentions of the parties to these contracts. One or more of the parties to these contracts intended to give Plaintiffs and the class members the benefit of the performance promised in the contracts.

188.    Hy-Vee breached these agreements, which directly and/or proximately caused Plaintiffs and the class members to suffer substantial damages.

189.    Upon further information and belief, Hy-Vee saved (or avoided spending) a substantial sum of money by knowingly failing to comply with its contractual obligations, and continues to do so.

190.    Accordingly, Plaintiffs and class members who have been injured are entitled to damages, restitution, and other relief in an amount to be proven at trial.

**COUNT V**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILL. COMP. STAT. §§ 505/1, *et seq.* ("Illinois CFA")**
**(On Behalf of Plaintiffs Perdue and Davis-Berg, and the Illinois Class)**

191.   Plaintiffs incorporate all foregoing substantive allegations as if fully set forth herein.

192.   Plaintiffs Perdue and Davis-Berg and the Illinois Class are "consumers" as that term is defined in 815 ILL. COMP. STAT. § 505/1(e). Plaintiffs Perdue and Davis-Berg, the Illinois Class, and Hy-Vee are "persons" as that term is defined in 815 ILL. COMP. STAT. § 505/1(c).

193.   Hy-Vee is engaged in "trade" or "commerce", including provision of services, as those terms are defined under 815 ILL. COMP. STAT. § 505/1(f).

194.   Hy-Vee engages in the "sale" of "merchandise" (including services) as defined by 815 ILL. COMP. STAT. § 505/1(b) and (d).

195.   Hy-Vee engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of "merchandise" (as defined in the Illinois CFA) in violation of the Illinois CFA, including but not limited to the following:

- failing to maintain sufficient security to keep Plaintiffs' and class members' sensitive Card Information being hacked and stolen;
- misrepresenting material facts to the class, in connection with the sale of goods and services, by representing that they would maintain adequate data privacy and security practices and procedures to safeguard class members' Card Information from unauthorized disclosure, release, data breaches, and theft;
- misrepresenting material facts to the class, in connection with sale of goods and services, by representing that Hy-Vee did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of class members' Card Information; and

- failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect class members' Card Information and other personal information from further unauthorized disclosure, release, data breaches, and theft.

196.    In addition, Hy-Vee's failure to disclose that its computer systems were not well-protected – including Hy-Vee's failure to disclose that, despite the general trend of a shift to chip technology for point of sale transactions, Hy-Vee had not made this transition – and that Plaintiffs' and Illinois Class members' sensitive information was vulnerable and susceptible to intrusion and cyberattacks constitutes deceptive and/or unfair acts or practices because Hy-Vee knew such facts would (a) be unknown to and not easily discoverable by Plaintiffs and the Illinois Class; and (b) defeat Plaintiffs' and Illinois Class members' ordinary, foreseeable and reasonable expectations concerning the security of their Card Information on Hy-Vee's servers.

197.    Hy-Vee intended that Plaintiffs and the Illinois Class rely on its deceptive and unfair acts and practices, misrepresentations, and the concealment, suppression, and omission of material facts, in connection with Hy-Vee's offering of goods and services and incorporating Plaintiffs' and Illinois Class members' Card Information on its servers, in violation of the Illinois CFA.

198.    Hy-Vee also engaged in unfair acts and practices by failing to maintain the privacy and security of class members' personal information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the data breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45) and similar state laws.

199.    Hy-Vee's wrongful practices occurred in the course of trade or commerce.

42

200.    Hy-Vee's wrongful practices were and are injurious to the public interest because those practices were part of a generalized course of conduct on the part of Hy-Vee that applied to all Illinois Class members and were repeated continuously before and after Hy-Vee obtained sensitive Card Information and other information from Plaintiffs and Illinois Class members. All Illinois Class members have been adversely affected by Hy-Vee's conduct and the public was and is at risk as a result thereof.

201.    Hy-Vee also violated 815 ILCS 505/2 by failing to immediately notify affected customers of the nature and extent of the Data Breach pursuant to the Illinois Personal Information Protection Act, 815 ILCS 530/1, *et. seq.*, which provides, at Section 10:

Notice of Breach.

(a) Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most expedient time to determine the scope of the breach and restore the reasonable integrity, security and confidentiality of the data system.

202.    815 ILCS 530/20 provides that a violation of 815 ILCS 530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."

203.    As a result of Hy-Vee's wrongful conduct, Plaintiffs and Illinois Class members were injured in that they never would have allowed their sensitive Card Information – the value of which Plaintiffs and Illinois Class members no long have control – to be provided to Hy-Vee if they had been told or knew that Hy-Vee failed to maintain sufficient security to keep such data from being hacked and taken by others.

204.    Hy-Vee's unfair and/or deceptive conduct proximately caused Plaintiffs' and class members' injuries because, had Hy-Vee maintained customer Card Information with adequate security, Plaintiffs and the class members would not have lost it.

205.    As a direct and proximate result of Hy-Vee's conduct, Plaintiffs and class members have suffered harm, including but not limited to loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the purchases made at Hy-Vee that Plaintiffs and class members would have never made had they known of Hy-Vee's careless approach to cybersecurity; lost control over the value of personal information; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Card Information, entitling them to damages in an amount to be proven at trial.

206.    Pursuant to 815 ILL. COMP. STAT. § 505/10a(a), Plaintiffs seek actual, compensatory, and punitive damages (pursuant to 815 ILL. COMP. STAT. § 505/10a(c)), injunctive relief, and court costs and attorneys' fees as a result of Hy-Vee's violations of the Illinois CFA.

**<u>COUNT VI</u>**
**VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**815 ILL. COMP. STAT. §§ 510/1, *et seq*. ("Illinois DTPA")**
**(On Behalf of Plaintiffs Perdue and Davis-Berg, and the Illinois Class)**

207.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

208.    Plaintiffs Perdue and Davis-Berg, the Illinois Class, and Hy-Vee are "persons" as defined in 815 ILL. COMP. STAT. § 510/1(5).

209.    The Illinois DTPA broadly prohibits deceptive trade practices. As set forth herein, Hy-Vee failed to safeguard Plaintiffs' and class members' confidential and sensitive personal

information. Accordingly, Hy-Vee has engaged in deceptive trade practices as defined in 815 ILL.
COMP. STAT. § 510/2.

210.    Hy-Vee's actions as set forth above occurred in the conduct of trade or commerce.

211.    Hy-Vee knew or should have known that its conduct violated the Illinois DTPA.

212.    Hy-Vee's conduct was material to Plaintiffs and the class.

213.    As set forth herein, Plaintiffs and the class suffered ascertainable loss caused by
Hy-Vee's violations of the Illinois DTPA, which proximately caused injuries to Plaintiffs and the
other class members.

214.    Pursuant to 815 ILL. COMP. STAT. § 510/3, Plaintiffs and the Illinois Class are
entitled to an award of injunctive relief to prevent Hy-Vee's deceptive trade practices and, because
Hy-Vee's conduct was willful, an award of reasonable attorneys' fees.

<u>COUNT VII</u>
**VIOLATIONS OF THE IOWA PERSONAL INFORMATION
SECURITY BREACH PROTECTION ACT
IOWA CODE § 715C.2 ("Iowa PISBPA")
(On Behalf of Plaintiffs Ellingson and Savoie and the Iowa Class)**

215.    Plaintiffs reallege and incorporate all previous allegations as though fully set
forth herein.

216.    Hy-Vee is a business that licenses computerized data including the Card
Information of Plaintiffs Ellingson and Savoie, and members of the Iowa Class, as defined by
IOWA CODE § 715C.2(1).

217.    Plaintiffs and Iowa Class members' Card Information includes financial
information covered under IOWA CODE §§ 715C.2(1), as defined under § 715C.1(11)(a)(3).

218.    Hy-Vee acted as a licensee of Card Information in using it to complete payment
card transactions and maintaining the sensitive Card Information on its systems.  Hy-Vee knew

of the intrusion into its servers and payment card environment but sat on its hands for months as it investigated the Data Breach before beginning to notify consumers impacted by the Data Breach. It delayed in sending the requisite, "immediate" notice to consumers under the Iowa PISBPA to Plaintiffs Ellingson and Savoie and other Iowa Class members. To date, Plaintiff Ellingson still has received no direct notice from Hy-Vee.

219. Because Hy-Vee was aware of a breach of its systems and payment card environment, it had an obligation to disclose the Data Breach in a timely and accurate fashion.

220. By failing to disclose the Data Breach in a timely and accurate fashion, Plaintiffs and Iowa Class members were harmed because they were not immediately able to take action and precautions to prevent credit fraud and identity theft.

221. By failing to disclose the Data Breach in a timely and accurate fashion, Hy-Vee violated Iowa Code §§ 715C.2(1).

222. Pursuant to Iowa Code § 715C.2(9), a violation of Iowa Code § 715C.2 is an unlawful practice under Iowa Code § 714.16(7).

223. As a direct and proximate result of Hy-Vee's violations of Iowa Code § 715C.2, Plaintiffs and Iowa Class members suffered damages, as described above. Plaintiffs and Iowa Class members seek relief under Iowa Code § 714.16(7), including actual damages and injunctive relief.

## COUNT VIII
### VIOLATIONS OF THE IOWA CONSUMER FRAUD ACT
#### Iowa Code §§ 714H.3, 714H.5 ("Iowa CFA")
#### (On Behalf of Plaintiffs Ellingson and Savoie and the Iowa Class)

224. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

46

225.    Plaintiffs Ellingson and Savoie and Iowa Class members are "consumers" as defined by the Iowa CFA.  Iowa Code § 714H.2(3).

226.    Hy-Vee is a "person" as defined by the Iowa CFA.  Iowa Code § 714H.2(7).

227.    Hy-Vee's conduct described herein related to the "sale" or "advertisement" of "merchandise" as defined by Iowa Code §§ 714H.2(2), (6), & (8).

228.    Hy-Vee engaged in unfair, deceptive, and unconscionable trade practices, in violation of the Iowa CFA, including:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Iowa Class members' sensitive Card Information, which was a direct and proximate cause of the Data Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Iowa Class members' sensitive Card Information, including duties imposed by *inter alia* the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Iowa Class members' sensitive Card Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Iowa Class members'

47

sensitive Card Information, including duties imposed by *inter alia* the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Iowa Class members' sensitive Card Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Iowa Class members' sensitive Card Information, including duties imposed by *inter alia* the FTC Act, 15 U.S.C. § 45.

229.    Hy-Vee's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of consumers' Card Information.

230.    Hy-Vee intended to mislead Plaintiffs and Iowa Class members and it intended to induce them to rely on its misrepresentations and omissions.

231.    Hy-Vee's untrue, deceptive, and misleading assertions, and representations, and its omissions concerning its data security materially induced Plaintiffs and other members of the Iowa Class to pay more than they otherwise would have paid at Hy-Vee had they known of is inadequate data security measures, and caused Plaintiffs to suffer losses.

232.    Hy-Vee acted intentionally, knowingly, and maliciously to violate the Iowa CFA, and recklessly disregarded Plaintiffs' and Iowa Class members' rights. Numerous recent data breaches impacting retail and restaurant chains put Hy-Vee on notice that its security and privacy protections were inadequate.

233.    As a direct and proximate result of Hy-Vee's unfair, deceptive, and unconscionable conduct, Plaintiffs and Iowa Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their sensitive personal information.

234.    Plaintiffs has provided the requisite notice of this action to the Iowa Attorney General.  On November 22, 2019, that office approved the filing of this class action lawsuit pursuant to IOWA CODE § 714H.7.

235.    Plaintiffs Ellingson and Savoie and the Iowa Class seek all monetary and nonmonetary relief allowed by law, including injunctive relief, damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT IX**
**PROTECTION OF CONSUMER INFORMATION**
**K.S.A. §§ 50-7a02(a),** *et seq.*
**(On Behalf of Plaintiffs Harley and Mary Williams, Melissa Ward, and the Kansas Class)**

236.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

237.    Hy-Vee is a business that licenses computerized data including the Card Information of Plaintiffs Harley and Mary Williams, and the Kansas Class.  The Card Information includes financial information covered under KAN. STAT. ANN. § 50-7a02(a), as defined under § 50-7a01(g)(3)

238.    Hy-Vee is and was required to accurately notify Plaintiffs and Kansas Class members if it becomes aware of a breach of its data security system that was reasonably likely to have caused misuse of Plaintiffs' and Kansas Class members' Card Information, in the most expedient time possible and without unreasonable delay under KAN. STAT. ANN. § 50-7a02(a).

49

239. Because Hy-Vee was aware of a breach of its systems that was reasonably likely to have caused misuse of Plaintiffs' and Kansas Class members' Card Information, it had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by KAN. STAT. ANN. § 50- 7a02(a).

240. By failing to disclose the Data Breach in a timely and accurate manner, Hy-Vee violated KAN. STAT. ANN. § 50-7a02(a).

241. As a direct and proximate result of Hy-Vee's violations of KAN. STAT. ANN. § 50-7a02(a), Plaintiffs and Kansas Class members suffered damages, as described above.

242. Plaintiffs and Kansas Class members seek relief under KAN. STAT. ANN. § 50-7a02(g), including equitable relief.

## COUNT X
### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### K.S.A. §§ 50-623, *et seq.* ("Kansas CPA")
### (On Behalf of Plaintiffs Harley and Mary Williams, Melissa Ward, and the Kansas Class)

243. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

244. The Kansas CPA is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

245. Plaintiffs and Kansas Class members are consumers as defined by K.S.A. § 50-624(b).

246. The acts and practices described herein are "consumer transactions" as defined by K.S.A. § 50-624(c).

247. Hy-Vee is a supplier as defined by K.S.A. § 50-624(l).

248. Hy-Vee advertised, offered, or sold goods or services in Kansas and engaged in trade or commerce directly or indirectly affecting the people of Kansas.

249. Hy-Vee engaged in deceptive and unfair acts or practices, including:

- failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Kansas Class members' sensitive Card Information, which was a direct and proximate cause of the Data Breach;

- failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

- failing to comply with the common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kansas Class members' sensitive Card Information, including duties imposed by, *inter alia*, the FTC Act, 15 U.S.C. § 45 and the Kansas identity fraud statute, the Wayne Owen Act, K.S.A. § 50-6,139b, which was a direct and proximate cause of the Data Breach;

- misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Kansas Class members' sensitive Card Information, including by implementing and maintaining reasonable security measures;

- mispresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kansas Class members' sensitive Card Information including duties imposed by *inter alia* the FTC Act 15 U.S.C. § 45 and Kansas's identity fraud statute, the Wayne Owen Act, K.S.A. § 50-6,139b;

- omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Kansas Class member's sensitive Card Information; and

- omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kansas Class members' sensitive Card Information, including duties imposed by *inter alia* the FTC Act, 15 U.S.C. § 45 and Kansas's identity fraud statute, the Wayne Owen Act, K.S.A. § 50-6,139b.

250.    Hy-Vee's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Hy-Vee's data security and ability to protect the confidentiality of consumers' sensitive Card Information.

251.    Hy-Vee intended to mislead Plaintiffs and Kansas Class members and induce them to rely on its misrepresentations and omissions.

252.     As a direct and proximate result of Hy-Vee's unfair, deceptive, and unconscionable trade practices, Plaintiffs Harley and Mary Williams and Kansas Class members have been aggrieved, and have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; imminent risk or fraud and identity theft; and loss of value of their sensitive personal information.

## COUNT XI
### VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
MINN. STAT. §§ 325F.69, *et seq*. and MINN. STAT. §§ 8.31, *et seq*. ("MCFA")
(On Behalf of Plaintiff Trang and the Minnesota Class)

253.     Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

254.     Hy-Vee, Plaintiff Trang, and members of the Minnesota Class are each a "person" as defined under the MCFA.  MINN. STAT. § 325.68(3).

255.     Hy-Vee's goods and services are "merchandise" as defined by MINN. STAT. § 325.68(2).

256.     Hy-Vee engages in "sales" as defined in MINN. STAT. § 325F.68(4).

257.     Hy-Vee engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise and services, in violation of MINN. STAT. § 325F.69(1), including:

- Failing to maintain sufficient security to keep Plaintiff's and Minnesota Class members' sensitive Card Information being exposed and stolen by criminals;

- Misrepresenting and fraudulently representing or omitting material facts by representing and advertising that it would, or omitting that it would not,

maintain adequate data privacy and security practices and procedures to safeguard Plaintiff's and Minnesota Class members' financial and personal information from unauthorized disclosure, release, data breaches, and theft;

- Misrepresenting (or omitting) material facts to Plaintiff Trang and the Minnesota Class by representing that it did and would (or omitting that it would not) comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff's and Minnesota Class members' financial and personal information;

- Omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Plaintiff's and Minnesota Class members' financial and personal information;

- Engaging in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Plaintiff's and Minnesota Class members' financial and personal information in violation of duties imposed by and public policies reflected in applicable federal and state laws resulting in the data breach. These unfair acts and practices violated duties imposed by laws including the FTC Act (15 U.S.C. § 45); and

- Engaging in deceptive, unfair, and unlawful acts or practices by failing to disclose the data breach to Plaintiff and Minnesota Class members' in a timely and accurate manner.

258.    Hy-Vee's representations and omissions regarding data privacy and security were material because they were likely to deceive reasonable consumers about the adequacy of Hy-Vee's data security and ability to protect the confidentiality of consumers' Card Information.

53

259.     Hy-Vee intended to mislead Plaintiff and Minnesota Class members and induce them to rely on their misrepresentations and omissions.

260.     Hy-Vee's conduct alleged herein affected the public interest, including thousands of Minnesotans affected by the Data Breach.

261.     As a direct and proximate result of Hy-Vee's deceptive trade practices, Plaintiff Trang and Minnesota Class members suffered injuries, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their sensitive personal information.

262.     Plaintiff Trang and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, penalties, injunctive or other equitable relief, and/or attorneys' fees and costs.

## COUNT XII
### VIOLATIONS OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
#### MINN. STAT. § 325D.43, *et seq.* ("MUDTPA")
#### (On Behalf of Plaintiff Trang and the Minnesota Class)

263.     Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

264.     By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Hy-Vee violated MINN. STAT. § 325D.44, including the following provisions:

    a.     Representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of MINN. STAT. § 325D.44(1)(5);

b.     Representing that goods and services are of a particular standard or quality when they are of another, in violation of MINN. STAT. § 325D.44(1)(7);

c.     Advertising goods and services with intent not to sell them as advertised, in violation of MINN. STAT. § 325D.44(1)(9); and

d.     Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of MINN. STAT. § 325D.44(1)(13).

265.    Hy-Vee's deceptive practices include:

- Failing to maintain adequate security to keep Plaintiff's and Minnesota Class members' sensitive Card Information being exposed and stolen by criminals;

- Misrepresenting and fraudulently representing or omitting material facts by representing and advertising that it would, or omitting that it would not, maintain adequate data privacy and security practices and procedures to safeguard Plaintiff's and Minnesota Class members' financial and personal information from unauthorized disclosure, release, data breaches, and theft;

- Misrepresenting (or omitting) material facts to Plaintiff and the Minnesota Class by representing that it did and would (or omitting that it would not) comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff's and Minnesota Class members' financial and personal information;

- Omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Plaintiff's and Minnesota Class members' financial and personal information;

55

- Engaging in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Plaintiff's and Minnesota Class members' financial and personal information in violation of duties imposed by and public policies reflected in applicable federal and state laws resulting in the data breach. These unfair acts and practices violated duties imposed by laws including the FTC Act (15 U.S.C. § 45); and

- Engaging in deceptive, unfair, and unlawful acts or practices by failing to disclose the data breach to Plaintiff and Minnesota Class members' in a timely and accurate manner.

266. Hy-Vee's representations and omissions regarding data privacy and security were material because they were likely to deceive reasonable consumers about the adequacy of Hy-Vee's data security and ability to protect the confidentiality of consumers' Card Information.

267. Hy-Vee intended to mislead Plaintiff and Minnesota Class members and induce them to rely on their misrepresentations and omissions.

268. Hy-Vee's conduct alleged herein affected the public interest, including thousands of Minnesotans affected by the Data Breach.

269. Had Hy-Vee disclosed to Plaintiff and the Minnesota Class members that its data systems were not secure and thus vulnerable to attack, Hy-Vee would have been unable to continue in business and would have been forced to adopt reasonable data security measures and comply with the law. Hy-Vee held itself out as legitimate businesses and providers of goods and services, and was entrusted with sensitive and valuable Card Information for many thousands of consumers, including Plaintiff and the Minnesota Class. Hy-Vee accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

56

Plaintiff and the Minnesota Class members acted reasonably in relying on Hy-Vee's misrepresentations and omissions, the truth of which they could not have discovered.

270.    Hy-Vee acted intentionally, knowingly, and maliciously to violate the MUDTPA, and recklessly disregarded Plaintiff and Minnesota Class members' rights. Numerous recent data breaches put Hy-Vee on notice that its security and privacy protections may be inadequate and of the need to sure up data privacy protections and measures.

271.    As a direct and proximate result of Hy-Vee's deceptive trade practices, Plaintiff and Minnesota Class members suffered injuries, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their sensitive personal information.

272.    Plaintiff Trang and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, penalties, injunctive or other equitable relief, and/or attorneys' fees and costs.

## COUNT XIII
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
#### MO. ANN. STAT. § 407.020(1), *et seq.* ("MMPA")
#### (On Behalf of Plaintiffs Murray and Grewing, and the Missouri Class)

273.    Plaintiffs Murray and Grewing repeat and reallege the allegations above as if fully set forth herein.

274.    Plaintiffs Murray and Grewing, the Missouri Class, and Hy-Vee are "persons" as defined in MO. ANN. STAT. § 407.020(1).

275.    Hy-Vee advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by MO. REV. STAT. § 407.010(4), (6) and (7).

276.    Plaintiff and Missouri Class members purchased or leased goods or services primarily for personal, family, or household purposes.

277.    The MMPA provides:

The act, … by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … is declared to be an unlawful practice.

MO. ANN. STAT. § 407.020.

278.    By reason of the conduct alleged herein, and by failing to provide reasonable security measures for the protection of the Card Information of Plaintiffs Murray and Grewing and Missouri Class members, Hy-Vee violated the provisions of § 407.020 of the MMPA.

279.    Hy-Vee's actions as set forth above occurred in the conduct of trade or commerce.

280.    Hy-Vee engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of MO. REV. STAT. § 407.020(1), including by:

- failing to maintain sufficient security to keep confidential and sensitive financial information of Plaintiffs and class members from being hacked and stolen;

- misrepresenting material facts to the class, in connection with the sale of goods and providing online purchases services, by representing that Hy-Vee would maintain adequate data privacy and security practices and procedures to safeguard class members' Card Information from unauthorized disclosure, release, data breaches, and theft;

- misrepresenting material facts to the class, in connection with the sale of goods and providing online purchases services, by representing that Hy-Vee did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of class members' personal information; and,

- failing to prevent the Data Breach and promptly notify consumers thereof, failing to maintain the privacy and security of class members' personal information, in

58

violation of duties imposed by and public policies reflected in applicable federal and state laws.

281.    Due to the Data Breach, Plaintiffs and Missouri Class members have lost property in the form of their Card Information and have suffered actual damages. Further, Hy-vee's failure to adopt reasonable practices in protecting and safeguarding the confidential and sensitive financial information of its customers has resulted in Plaintiff Murray and Grewing and Missouri Class members spending time and money to protect against identity theft. Plaintiffs and Missouri Class members are now at a higher risk of identity theft crimes. This harm sufficiently outweighs any justifications or motives for Hy-Vee's practice of collecting and storing confidential and sensitive financial information without the appropriate and reasonable safeguards to protect such information.

282.    As a result of Hy-Vee's practices and conduct, Plaintiffs and Missouri Class members have suffered injury-in-fact and have lost money or property. As a result of Hy-Vee's failure to adopt, implement, and maintain reasonable security procedures, and the resulting Data Breach, Plaintiffs Murray and Grewing, and Missouri Class members have incurred costs and spent time associated with monitoring and repairing their credit and issues of identity theft.

## COUNT XIV
### VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
#### WIS. STAT. §§ 100.18, *et seq.* ("WDPTA")
#### (On Behalf of Plaintiff Davis and the Wisconsin Class)

283.    Plaintiff Davis repeats and realleges the allegations above as if fully set forth herein.

284.    The WDPTA, §100.18(1) states, in relevant part that no

"firm, corporation or association, . . . with intent to sell, distribute, increase the consumption of . . . any . . . merchandise, . . . service, or anything offered by such person, firm, corporation or association, . . . directly or indirectly, to the public for

sale, . . . shall make, publish, disseminate, circulate, or place before the public, . . . in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such . . . sale . . . of such . . . merchandise, . . . [or] service, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

*Id.*

285.    By reason of the conduct alleged herein, and by failing to provide reasonable security measures for the protection of the Card Information of Plaintiff Davis and Wisconsin Class members, Hy-Vee violated the provisions of § 100.18 of the WDTPA.

286.    Hy-Vee's conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, its misrepresentations that customer privacy is a high priority for Hy-Vee and omitting that Hy-Vee did not utilize adequate data security measures to protect customers' sensitive Card Information.

287.    Hy-Vee's untrue, deceptive, and misleading assertions, and representations, and its omissions concerning its data security materially induced Plaintiff Davis and other members of the Wisconsin Class to pay more than they otherwise would have paid at Hy-Vee had they known of is inadequate data security measures, and caused Plaintiff Davis to suffer losses.

288.    Hy-Vee had a duty to disclose to Plaintiff Davis and members of the Wisconsin Class that it did not adequately protect sensitive Card Information, as the facts were material to Davis's and the Wisconsin Class members' transactions; because Hy-Vee made contrary representations and statements concerning its approach to data security and privacy; because Hy-Vee as the party with knowledge of its data security shortcomings, knew that Davis and members of the Wisconsin Class were entering transactions under a mistake as to the fact of its data security practices; because that fact was peculiarly and exclusively within Hy-Vee's

60

knowledge, and Davis and Wisconsin Class members could not reasonably be expected to discover it; and on account of the objective circumstances, Davis and the members of the Wisconsin Class reasonably expected disclosure of the fact that Hy-Vee did not protect sensitive Card Information.

289.    Due to the Data Breach, Plaintiff and Wisconsin Class members have lost property in the form of their Card Information and have suffered actual damages. Further, Hy-Vee's failure to adopt reasonable practices in protecting and safeguarding the confidential and sensitive financial information of its customers has resulted in Plaintiff Davis and Wisconsin Class members spending time and money to protect against identity theft. Plaintiff and Wisconsin Class members are now at a higher risk of identity theft crimes. This harm sufficiently outweighs any justifications or motives for Hy-Vee's practice of collecting and storing confidential and sensitive financial information without the appropriate and reasonable safeguards to protect such information.

290.    As a result of Hy-Vee's practices, Plaintiff Davis and Wisconsin Class members have suffered injury-in-fact and have lost money or property. As a result of Hy-Vee's failure to adopt, implement, and maintain reasonable security procedures, and the resulting Data Breach, Plaintiff Davis and Wisconsin Class members have incurred costs and spent time associated with monitoring and repairing their credit and issues of identity theft.

291.    Hy-Vee's conduct proximately caused the injuries to Davis and the Wisconsin Class members and they are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT XV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Each State Class)**

292.   Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

293.   This claim is plead in the alternative to the above implied contract claim.

294.   Plaintiffs and class members conferred a monetary benefit upon Hy-Vee in the form of monies paid for the purchase of food and food-related services at its locations.

295.   Hy-Vee appreciated or had knowledge of the benefits conferred upon them by Plaintiffs and class members. Hy-Vee also benefited from the receipt of Plaintiffs' and class members' Card Information, as this was utilized by Hy-Vee to facilitate payment to it.

296.   The monies for food, dining, and food-related services that Plaintiffs and class members paid to Hy-Vee were supposed to be used by Hy-Vee, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

297.   As a result of Hy-Vee's conduct, Plaintiffs and class members suffered actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy and security practices and procedures that Plaintiffs and class members paid for, and those purchases without unreasonable data privacy and security practices and procedures that they received.

298.   Under principals of equity and good conscience, Hy-Vee should not be permitted to retain the money belonging to Plaintiffs and class members because Hy-Vee failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiffs and class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

299. Hy-Vee should be compelled to disgorge into a common fund for the benefit of Plaintiffs and class members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the class, respectfully request that the Court grant the following relief:

A.      Certify this case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), and, pursuant to Fed. R. Civ. P. 23(g), appoint Plaintiffs as class representatives and their counsel as class counsel.

B.      Award Plaintiffs and the class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement.

C.      Award Plaintiffs and the class equitable, injunctive, and declaratory relief as may be appropriate. Plaintiffs, on behalf of the class, seek appropriate injunctive relief designed to ensure against the recurrence of a data breach by adopting and implementing best security data practices to safeguard customers' financial and personal information, extend credit monitoring services and similar services to protect against all types of identity theft, especially including card theft and fraudulent card charges, and to provide elevated credit monitoring services to minor and elderly class members who are more susceptible to fraud and identity theft.

D.      Award Plaintiffs and the class pre-judgment and post-judgment interest to the maximum extent allowable.

E.      Award Plaintiffs and the class reasonable attorneys' fees and costs as allowable.

F.      Award Plaintiffs and the class such other favorable relief as allowable under law or at equity.

Dated:  December 30, 2019

Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**

 _/s/   Benjamin F. Johns_
Benjamin F. Johns
Andrew W. Ferich
Alex M. Kashurba (to be admitted)
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com
awf@chimicles.com
amk@chimicles.com

Ben Barnow
Erich P. Schork
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph St., Ste. 1630
Chicago, IL 60606
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

*Interim Co-Lead Class Counsel*

William B. Federman
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
WBF@federmanlaw.com

Cornelius P. Dukelow
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (telephone & facsimile)
cdukelow@abingtonlaw.com

Shpetim Ademi
**ADEMI & O'REILLY, LLP**
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com

*Plaintiffs' Steering Committee*


Kyle Shamberg
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone:  312-750-1265
Email: kcarroll@carlsonlynch.com
Email: kshamberg@carlsonlynch.com

*Plaintiffs' Liaison Counsel*


Matthew M. Guiney
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
(212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com

Carl Malmstrom
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
111 West Jackson
Suite 1700
Chicago, IL 60604
(312) 984-0000
malmstrom@whafh.com

*Additional Counsel for Plaintiffs
  and the Putative Class*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed and served via the Court's electronic case filing system on this 30th day of December, 2019, on all counsel of record.

_____/s/   Benjamin F. Johns_____
Benjamin F. Johns