**E-FILED**
Friday, 28 February, 2020  04:29:09 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NOREEN PERDUE, ELIZABETH DAVIS-BERG, DUSTIN MURRAY, MELANIE SAVOIE, CHERYL ELLINGSON, ANGELA TRANG, HARLEY WILLIAMS, MARY WILLIAMS, GORDON GREWING, MELISSA WARD and PATRICIA DAVIS, individually and on behalf of all others similarly situated, ) ) ) ) ) ) ) ) | CASE NO. 1:19-cv-01330-MMM-JEH |
| Plaintiffs, ) ) | **MEMORANDUM OF LAW IN OPPOSITION TO HY-VEE'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. ) ) ) | |
| HY-VEE, INC., ) ) | **JURY TRIAL DEMANDED** |
| Defendant. ) ) | |

Benjamin F. Johns
Andrew W. Ferich
Alex M. Kashurba
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com
awf@chimicles.com
amk@chimicles.com

Ben Barnow
Erich P. Schork
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph St., Ste. 1630
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

*Interim Co-Lead Class Counsel*

[Additional Counsel on Signature Page]

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

COUNTERSTATEMENT OF FACTS ................................................................................1

ARGUMENT .......................................................................................................................4

    A.      Legal Standard ........................................................................................4

    B.      The Complaint Alleges Viable Statutory Consumer Protection Claims .................4

          1.      Hy-Vee Does Not Challenge Plaintiffs' Consumer Protection Claims Grounded in Its Unfair Practices ........................................................4

          2.      Plaintiffs' Omission-Based Consumer Protection Claims Satisfy the Requirements of Rule 9(b) ........................................................5

          3.      Plaintiffs Allege Actual Damages and Ascertainable Losses ....................7

          4.      Plaintiffs' Allegations Establish Causation .................................................9

          5.      Plaintiffs Adequately State Omissions-Based Claims Under the Minnesota DTPA, Minnesota CPA, and the MMPA ..........................10

          6.      The Illinois and Minnesota Plaintiffs Allege Risk of Future Harm ..........12

    C.      Plaintiffs State Claims Under the Iowa and Kansas Data Breach Statutes .........................................................................13

    D.      The Law of the Place of Purchase Applies to Plaintiffs' Common Law Claims ...............................................................15

          1.      Outcome Determinative Conflicts Exist .....................................................15

          2.      The Law of the State of Purchase Governs .................................................19

    E.      Plaintiffs' Implied Contract Claims Are Adequately Pleaded ..............................19

          1.      Plaintiffs Allege the Existence of an Implied Contract .............................19

          2.      Plaintiffs Plead the Existence and Breach of Contracts to Which Plaintiffs Were Intended Third-Party Beneficiaries ..................22

    F.      Plaintiffs Adequately State a Claim for Unjust Enrichment ..................................23

G.    Plaintiffs Have Successfully Alleged Claims for Negligence ..............................25

1.    The Duty to Safeguard Personal Information .............................................25

a.    Illinois .........................................................................................25

b.    Minnesota....................................................................................26

c.    Wisconsin....................................................................................26

d.    Kansas and Missouri ...................................................................26

e.    The FTC Act is a Proper Basis for a Negligence *Per Se* Claim ....27

f.    The Economic-Loss Doctrine Does Not Bar the Claims
of the Illinois, Missouri or Kansas Plaintiffs .................................29

CONCLUSION ........................................................................................................30

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
    718 N.E.2d 181 (1999)....................................................................................18

*Alvarado v. Sersch*,
    2003 WI 55, 262 Wis. 2d 74, 662 N.W.2d 350 ....................................................26

*Anderson v. Hannaford Bros. Co.*,
    659 F.3d 151 (1st Cir. 2011)............................................................................20

*Anderson v. State*,
    693 N.W.2d 181 (Minn. 2005)..........................................................................18

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ..............23

*In re Arby's Rest. Grp. Litig.*,
    No. 1:17-CV-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018)....................28

*Attias v. Carefirst, Inc.*,
    865 F.3d 620 (D.C. Cir. 2017), *cert denied* 138 S. Ct. 981 (Feb. 20, 2018) ..........12

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) ....................................................................4, 5, 18

*Boulet v. Nat'l Presto Indus., Inc.*,
    No. 11-CV-840-SLC, 2012 WL 12996297 (W.D. Wis. May 7, 2012) ..................23

*Bratton v. Hershey Co.*,
    No. 2:16-CV-4322-C-NKL, 2017 WL 2126864 (W.D. Mo. May 16, 2017) ...........5

*Bray v. Gamestop Corp.*,
    1:17-cv-1365, 2018 U.S. Dist. LEXIS 226220 (D. Del. Mar. 16, 2018)................22

*Caldas v. Affordable Granite & Stone, Inc.*,
    820 N.W.2d 826 (Minn. 2012)..........................................................................18

*Congregation of the Passion v. Touche Ross & Co.*,
    636 N.E.2d 503 (Ill. 1994) ...............................................................................17

*Connick v. Suzuki Motor Co.*,
    675 N.E. 2d 584 (Ill. 1996) ................................................................10

*Cooney v. Chicago Public Schools*,
    943 N.E.2d 23 (Ill. App. 2010) ......................................................17, 25

*Corvias Military Living, LLC v. Ventamatic, Ltd.*,
    450 P.3d 797 (Kan. 2019) ..................................................................18

*Cummings v. Energy Int'l Servs., LC*,
    271 F. Supp. 3d 1182 (E.D. Cal. 2017) ............................................22

*Cuyler v. United States*,
    362 F.3d 949 (7th Cir. 2004) ............................................................29

*David v. Hett*,
    293 Kan. 679, 270 P.3d 1102 (2011) ................................................30

*De Bouse v. Bayer, Inc.*,
    922 N.E.2d 309 (Ill. 2009) ................................................................10

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.*,
    No. 15-CV-02129-MSK-NYW, 2016 WL 8578096 (D. Colo. June 20, 2016) ......................20

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) ......................................14, 28

*F.T.C. v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) ..............................................................27

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972) ..........................................................................28

*Fullerton v. Corelle Brands, LLC*,
    Nos. 18-cv-4152, 18-cv-4198, 2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ......................5, 7

*In re Genetically Modified Rice Litig.*,
    666 F. Supp. 2d 1004 (E.D. Mo. 2009) ............................................29

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018) ........................................ *passim*

*Graham Constr. Servs. v. Hammer & Steel Inc.*,
    755 F.3d 611 (8th Cir. 2014) ............................................................17

*In re Hannaford Bros. Customer Data Sec. Breach Litig.*,
    613 F. Supp. 2d 108 (D. Me. 2009) ..................................................20

*Hapka v. Carecentrix, Inc.*,
  No. 16-cv-2372, 2016 WL 7336407 (D. Kan. Dec. 19, 2016) ........................................16, 26

*Hargis v. JLB Corp.*,
  357 S.W.3d 574 (Mo. 2011) ....................................................................................18

*Hoyt v. Gutterz Bowl & Lounge LLC*,
  829 N.W.2d 772 (Iowa 2013) .................................................................................16

*Irwin v. Jimmy John's Franchise, LLC*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) (rejecting *Lovell v. P.F. Chang's China
  Bistro, Inc.*, No. C14-1152RSL, 2015 U.S. Dist. LEXIS 112101 (W.D. Wash.
  Mar. 27, 2015)) ....................................................................................................21

*Johnson v. Bobcat Co.*,
  175 F. Supp. 3d 1130 (D. Minn. 2016) .................................................................17

*Kehrer Bros. Constr., Inc. v. Intercoastal Roofing Sols.*,
  LLC, No. 3:13-CV-0085-JAJ, 2013 WL 11740243 (S.D. Iowa Dec. 19, 2013) ....................23

*Kuhns v. Scottrade, Inc.*,
  868 F.3d 711 (8th Cir. 2017) ............................................................................11, 12

*Lees v. Carthage College*,
  714 F.3d 516 (7th Cir. 2013) ................................................................................16

*Lozada v. Advocate Health & Hosps. Corp.*,
  2018 IL App (1st) 180320-U ..................................................................................23

*Madden v. C & K Barbecue Carryout, Inc.*,
  758 S.W.2d 59 (Mo. 1988) ....................................................................................27

*Manley v. Hallbauer*,
  308 Kan. 723, 423 P.3d 480 (2018) .......................................................................27

*In re Marriott Int'l, Inc.*,
  No. 19-md-2879, 2020 WL 869241 (D. Md. Feb. 21, 2020)........................................ *passim*

*Martinez v. Kilroy Was Here LLC*,
  551 S.W.3d 491 (Mo. Ct. App. 2018)....................................................................18

*Marty H. Segelbaum, Inc., v. MW Capital, LLC*,
  673 F. Supp. 2d 875 (D. Minn. 2009) ...................................................................23

*McBride v. McLean Cty.*,
  397 F. Supp. 3d 1198 (C.D. Ill. 2019) ....................................................................4

*Mea Fin. Enterprises, LLC v. Fiserv Sols., Inc.*,
  No. 13-05041-CV-SW-BP, 2013 WL 12155467 (W.D. Mo. Oct. 16, 2013) ........................29

*Mendy v. AAA Ins.*,
  No. 17-2322-DDC-GLR, 2017 WL 4422648 (D. Kan. Oct. 5, 2017) ....................................23

*In re Michaels Stores Pin Pad Litig.*,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) .............................................................................17, 20

*State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*,
  694 N.W.2d 518 (Iowa 2005) ............................................................................................5

*Mirfasihi v. Fleet Mortg. Corp.*,
  450 F.3d 745 (7th Cir. 2006) ............................................................................................16

*Muir v. NBTY, Inc.*,
  No. 15 C 9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016)................................................15

*State ex rel. Palmer v. Unisys Corp.*,
  637 N.W.2d 142 (Iowa 2011) ............................................................................................18

*POM Wonderful, LLC v. F.T.C.*,
  777 F.3d 478 (D.C. Cir. 2015)............................................................................................29

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 15-MD-2633, 2019 WL 3410382 (D. Or. July 29, 2019)...........................................16, 23

*Pullen v. West*,
  92 P.3d 584 (Kan. 2004) ...................................................................................................18

*Rand Constr. Co. v. Dearborn Mid-West Conveyor Co.*,
  944 F. Supp. 2d 1042 (D. Kan. 2013) .................................................................................17

*Remijas v. Neiman Marcus Group LLC*,
  794 F.3d 688 (7th Cir. 2015) ...................................................................................12, 13, 24

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) .....................................................................................23, 24

*Rudolph v. Hudson's Bay Co.*,
  No. 18-CV-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May 7, 2019)...........................23, 24

*Savidge v. Pharm-Save, Inc.*,
  No. 3:17-CV-00186-TBR, 2017 WL 5986972 (W.D. Ky. Dec. 1, 2017) .............................21

*Shirley v. Glass*,
  308 P.3d 1 (Kan. 2013).....................................................................................................28

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ..........................................................9, 11, 12

*Stuart v. Weisflog's Showroom Gallery, Inc.*,
  753 N.W.2d 462 (Wis. 2008) ........................................................................17

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
  No. 14-md-2586, 2018 WL 1189327 (D. Minn. Mar. 7, 2018) ..............................24

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ..........................................................................4

*In re Target Corp. Consumer Data Sec. Breach Litig.*,
  64 F. Supp. 3d 1304 (D. Minn. 2014) ........................................................16, 26

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  309 F.R.D. 482 (D. Minn. 2015) ....................................................................16

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ....................................................... *passim*

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-MD-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016) ..................28

*Thompson v. Kaczinski*,
  774 N.W.2d 829 (Iowa 2009) ........................................................................16

*Tietsworth v. Harley-Davidson, Inc.*,
  677 N.W.2d 233 (Wis. 2004) ........................................................................28

*Totsky v. Riteway Bus Serv., Inc.*,
  607 N.W.2d 637 (Wis. 2000) ........................................................................18

*Townsend v. Sears, Roebuck & Co.*,
  879 N.E.2d 893 (Ill. 2007) ............................................................................19

*Tufts v. Newmar Corp.*,
  53 F. Supp. 2d 1171 (D. Kan. 1999) ................................................................5

*Vanzant v. Hill's Pet Nutrition, Inc.*,
  934 F.3d 730 (7th Cir. 2019) ......................................................................9, 10

*In re VTech Data Breach Litig.*,
  No. 15 CV 10889, 2018 WL 1863953 (N.D. Ill. Apr. 18, 2018) ............................6

*Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*,
  69 F. Supp. 3d 928 (E.D. Mo. 2014) ..............................................................29

*Webb v. Frawley*,
   906 F.3d 569 (7th Cir. 2018) ................................................................4

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
   536 F.3d 663 (7th Cir. 2008) ................................................................5

## **STATUTES**

815 ILCS § 530/45 ................................................................17, 25

Iowa Code § 715C.2 ................................................................13, 15

Iowa Code § 715C.2(8)(b) ................................................................14

Iowa Code § 715H ................................................................9

Kan. Stat. Ann. § 50-7a02(a) ................................................................15

Kan. Stat. Ann. § 50-7a02(g) ................................................................14

Kan. Stat. § 50-7a02 ................................................................13

Minn. Stat. § 325F.68 ................................................................10

Wis. Stat. §§ 100.18 ................................................................28

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ................................................................5

Fed. R. Civ. P. 9(b) ................................................................5, 6, 7

Fed. R. Civ. P. 12(b)(6) ................................................................4

## INTRODUCTION

The facts presented by this litigation are all too common. As the owner of more than 240 retail stores in eight midwestern states, defendant Hy-Vee, Inc. ("Hy-Vee"), knew it was a prime target for a malware attack intended to steal its customers' private and confidential financial information, including credit card and debit card numbers, expiration dates, cardholder names, internal card verification codes, and other payment card information (collectively, "Card Information"). Yet it failed to implement reasonable security measures to protect its customers' Card Information. As a direct result, Hy-Vee's payment card network was compromised by criminals and it failed to detect the infiltration for many months (the "Data Breach").

The harm stemming from Hy-Vee's misconduct is very real. One leading cyber-security expert has linked the Data Breach to criminals offering for sale on the dark web the Card Information of more than 5.3 million accounts. After shopping at Hy-Vee locations during the Data Breach, Plaintiffs experienced credit or debit card fraud, had their payment cards cancelled, were unable to access funds for periods of time, purchased credit monitoring to mitigate the harm of the Data Breach, and/or were forced to spend a significant amount of time reporting fraudulent charges, communicating with their banks, or otherwise responding to the breach.

As shown herein, Plaintiffs' claims seek redress for the harms caused by Hy-Vee's data security failures. The claims are well-pleaded, and Hy-Vee's motion should be denied.

## COUNTERSTATEMENT OF THE FACTS

This case stems from Hy-Vee's failure to provide adequate safeguards to protect the sensitive Card Information of more than 5 million consumers. Pls' Consol. Second Am. Class Action Comp. ("CAC") ¶¶ 1, 9, 90.[1]

---

[1] "¶" refers to paragraphs in the operative CAC.

Hy-Vee is a large supermarket chain that operates gas pumps, restaurants, and/or coffee shops at many of its locations. ¶¶ 79–82. As a purveyor of various goods and services, Hy-Vee processed Card Information of millions of individuals. It had obligations based on payment card industry standards and under various laws to protect this information. ¶¶ 102–16. Indeed, its own privacy commitments acknowledge these obligations. ¶ 105. Hy-Vee breached these duties and promises by disregarding industry standards and failing to take adequate security precautions to protect its consumers' Card Information. ¶¶ 117–38.

As a result, Plaintiffs' and class members' Card Information was stolen, sold online, and fraudulently used by criminals, thereby damaging Plaintiffs and class members. ¶¶ 90, 133–35. To date, Hy-Vee has done virtually nothing to mitigate the damage caused by its failure to implement adequate data security and protect Plaintiffs' and class members' Card Information. ¶¶ 136–38.

Hy-Vee detected the Data Breach on July 29, 2019. ¶ 94. On or about August 14, 2019, Hy-Vee posted a "Notice of Payment Card Data Incident" alert on its corporate website. ¶ 86. The Notice confirms Hy-Vee failed to utilize card encryption technology on the point-of-sale terminals located at gas pumps, restaurants, and/or coffee shops at some locations. ¶ 87. The Notice also confirms Hy-Vee did utilize card encryption technology on the point-of-sale terminals located in grocery store checkout lanes, pharmacies, and convenience stores. ¶ 88.

A Report published by Hy-Vee on October 3, 2019 confirms that the Data Breach was carried out by the use on point-of-sale malware, and that Card Information was accessed at various periods of time and at various locations. ¶¶ 94–96. The exposed Card Information is being offered for sale on the notorious "dark web" underground website called Joker's Stash. ¶ 90.

Plaintiffs were among those who fell victim to the Hy-Vee Data Breach. Plaintiffs used payment cards to make purchases at affected Hy-Vee locations while the breach was ongoing. ¶¶

13, 20, 25, 31, 37, 45, 52, 59, 68, 73. Plaintiffs received notices confirming that their Card Information was compromised in the breach. ¶¶ 14, 26, 32, 38, 46, 64. Plaintiffs' Card Information was used fraudulently as a result of the breach. ¶¶ 33, 47, 53, 61.

As a result of the breach, each Plaintiff experienced actual fraud or loss, and suffered damages, including, *inter alia*, lost time, money, and/or access to funds. Plaintiff Perdue went for three weeks without access to her card, which was the only way she can access her money and pay her bills. ¶ 15. She was required to spend a significant amount of time addressing fraud concerns related to her compromised card. ¶ 16. Plaintiff Savoie suffered fraudulent charges on her credit card and ultimately spent approximately five hours dealing with the aftermath of the breach. ¶¶ 33, 34. Plaintiff Ellingson's bank cancelled and replaced her debit card, preventing her from having access to her funds between August 27, 2019 and September 4, 2019. ¶ 39–40. She spent approximately one week of her time dealing with the aftermath of the breach. ¶ 42. Plaintiff Trang suffered fraudulent charges, an overdraft, and a cancelled card. ¶ 47. She spent three hours dealing with the effects of the breach. Plaintiffs Harley and Mary Williams suffered $700 in fraudulent charges on their debit account. ¶ 53. They were left without the use of their monies for three weeks. ¶ 54. Like the other plaintiffs, they spent hours of their time dealing with the aftermath of the breach. ¶ 56. Plaintiff Grewing suffered fraudulent charges. ¶ 61. He spent time driving to the bank, disputing the charges, and cancelling his debit card. ¶ 62. After learning of the breach, he decided to purchase a TransUnion Credit Monitoring Plan. ¶ 63. Plaintiff Murray had his debit card cancelled and replaced. ¶ 26. He spent approximately three hours dealing with the impact of the breach. ¶ 28. Plaintiff Davis had a card cancelled and replaced after the Data Breach and spent time, like the other Plaintiffs, dealing with the aftermath. ¶ 70. Plaintiffs Ward and Davis-Berg have had to spend additional time monitoring her accounts subsequent to the breach. ¶¶ 21, 76.

The Data Breach was the proximate and actual cause of Plaintiffs' injuries (¶ 9), and had they known that Hy-Vee does not adequately safeguard sensitive Card Information, they would not have shopped at Hy-Vee (¶¶ 18, 23, 29, 35, 43, 50, 57, 66, 71, 77).

## ARGUMENT

### A. Legal Standard

A complaint should only be dismissed under Fed. R. Civ. P. 12(b)(6) if the facts alleged fail to state a plausible claim for relief. *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (citation omitted). In other words, a claim must "give enough details about the subject-matter of the case to present a story that holds together" to be plausible. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In ruling on a motion to dismiss, the court must accept the facts in the complaint as true and construe them in the light most favorable to the plaintiff. *See McBride v. McLean Cty.*, 397 F. Supp. 3d 1198, 1206 (C.D. Ill. 2019).

### B. The Complaint Alleges Viable Statutory Consumer Protection Claims

#### 1. Hy-Vee Does Not Challenge Plaintiffs' Consumer Protection Claims Grounded in Its Unfair Practices

The Illinois and Iowa CFAs, Kansas CPA, and MMPA[2] prohibit fraudulent, deceptive, *and* "unfair" acts or practices. *See, e.g., Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (recognizing Illinois CFA "allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but the two categories have different pleading

---

[2] Plaintiffs do not oppose Hy-Vee's motion to dismiss directed to their claim under the Wisconsin Deceptive Trade Practices Act.

standards").[3] Pleading "unfair" claims under these statutes is governed by Rule 8, not Rule 9(b). *See, e.g., id.* at 646; *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Hy-Vee thus misstates Rule 9(b)'s applicability. *See* Def. Br. at 23–24.

In addition to their claims of fraudulent or deceptive acts, Plaintiffs allege that Hy-Vee engaged in unfair acts or practices in violation of the Illinois CFA, Iowa CFA, Kansas CPA, and MMPA by failing to implement and maintain reasonable security measures to protect sensitive Card Information. *E.g.,* ¶¶ 198, 228, 249, 280. Hy-Vee completely ignores these claims—instead it mischaracterizes all of Plaintiffs' consumer fraud claims as run-of-the-mill affirmative misrepresentation claims to which the heightened pleading standard of Rule 9(b) applies. But these unfair acts or practices claims under the Illinois CFA, Iowa CFA, MMPA, and Kansas CPA are subject to the liberal notice pleading requirements of Rule 8(a). Because Hy-Vee does not address this, it has waived seeking dismissal of these unfair acts or practices claims on these grounds

### 2. Plaintiffs' Omission-Based Consumer Protection Claims Satisfy the Requirements of Rule 9(b)

The standard for pleading a consumer protection "fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim." *Fullerton v. Corelle Brands, LLC*, Nos. 18-cv-

---

[3] *See also State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 525 (Iowa 2005) (recognizing that the Iowa CFA "deems a variety of bad business practices as unlawful" and statutes, such as the Iowa CFA "that prohibit 'unfair practices' are designed to infuse flexible equitable principles into consumer protection law so that it may respond to the myriad of unscrupulous business practices modern consumers face"); *Tufts v. Newmar Corp.*, 53 F. Supp. 2d 1171, 1181-82 (D. Kan. 1999) ("The Kansas Consumer Protection Act limits not only deceptive practices but also 'unconscionable' practices which may not involve misrepresentations but are considered too one-sided to stand."); *Bratton v. Hershey Co.*, No. 2:16-CV-4322-C-NKL, 2017 WL 2126864, at *4 (W.D. Mo. May 16, 2017) ("The Missouri Supreme Court has explained that an 'unfair practice' under the MMPA covers every unfair practice imaginable and every unfairness, to whatever degree.").

4152, 18-cv-4198, 2019 WL 4750039, at *9 (N.D. Ill. Sept. 30, 2019); *see also In re Marriott Int'l, Inc.*, No. 19-md-2879, 2020 WL 869241, at *32 (D. Md. Feb. 21, 2020) (citing *Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 WL 3829520, at *8 (D. Md. Aug. 1, 2014) ("Rule 9(b) is less strictly applied with respect to claims of fraud by concealment or omission of material facts . . . because an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."). For Plaintiffs' claims to which the relaxed Rule 9(b) standard does apply—i.e., their omissions-based claims for violation of the Illinois CFA, Illinois DTPA, Iowa CFA, Kansas CPA, MMPA, Minnesota CFA, and the Minnesota DTPA—Plaintiffs have alleged with particularity the "who," "what," "where," and "how" of Hy-Vee's deceptive and fraudulent conduct. *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953, at *6 (N.D. Ill. Apr. 18, 2018) ("If Rule 9(b) applies, the 'who, what, when, where, and how' of the fraud must be alleged with particularity.").

The CAC is replete with detailed and particularized allegations supporting Plaintiffs' consumer fraud claims. For example, Plaintiffs allege that Hy-Vee ("who") knew, or should have known, its inadequate data security would be the target of malware infiltration (*e.g.*, ¶¶ 121-23); knew the Card Information it maintains is highly sensitive and valuable (*e.g.*, ¶ 104), was aware that its security measures to protect customer Card Information were grossly inadequate (¶¶ 4, 105 [no encryption], 121) ("what" and "how"), and was subjected to a data breach because of this (*e.g.*, ¶¶ 9, 127) ("what"); that the breach occurred during a period of nine months spanning November 2018 to August 2019 (¶ 5) ("when"); that fraudsters used point of sale malware intrusion to infiltrate Hy-Vee's payment card environment in order to carry out the breach (*e.g,* ¶¶ 87–88, 94) ("how"); and that Hy-Vee knew about its data security failures yet concealed this information and withheld it from Plaintiffs and other consumers ("what") (*e.g.,* ¶¶ 138, 196, 257, 265). Plaintiffs

also allege that Hy-Vee's omissions were material, because had Plaintiffs known of Hy-Vee's lack

of adequate security measures, they would not have made a purchase at Hy-Vee using a payment

card. ¶¶ 18, 23, 29, 35, 43, 50, 57, 66, 77. These factual allegations readily satisfy Rule 9(b)'s

requirements for pleading fraud by omission. *See Fullerton*, 2019 WL 4750039, at *9; *Marriott*,

2020 WL 869241, at *32. Nothing more is necessary to satisfy Rule 9(b), and there is no basis to

dismiss the omission-based consumer fraud claims for lack of requisite specificity.

### 3.   Plaintiffs Allege Actual Damages and Ascertainable Losses

Plaintiffs also allege actual damages and ascertainable losses as a result of Hy-Vee's unfair

and deceptive conduct. Hy-Vee's suggestion otherwise (Def. Br. at 25-27) is unavailing.

The Seventh Circuit expressly recognized in *Dieffenbach v. Barnes & Noble, Inc.* that the

inability to access one's funds for any amount of time constitutes economic injury and that "the

value of one's own time needed to set things straight is a loss from an opportunity-cost

perspective." 887 F.3d 826, 828–29 (7th Cir. 2018). While *Dieffenbach* addresses California

consumer law's "loss of money or property" requirement, the Seventh Circuit's analysis applies

equally to the Illinois CFA's "actual damage" requirement and the Iowa CFA's and MMPA's

"ascertainable loss" requirements. *See id.*; *see also Gordon v. Chipotle Mexican Grill, Inc.*, 344 F.

Supp. 3d 1231, 1255 (D. Colo. 2018) (applying *Dieffenbach's* value of time analysis in denying

motion to dismiss California, Illinois, and Missouri consumer protection claims in a payment card

data breach case); *In re Marriott*, 2020 WL 869241, *37 (the "loss of time and money spent

mitigating harm" constitutes damages).

As discussed above, Plaintiffs Perdue, Ellingson, Savoie, Grewing, Murray, and Davis

spent a significant amount of time reporting fraudulent charges, communicating with their banks,

or otherwise responding to the breach. ¶¶ 14, 17, 28, 32, 34, 38–42, 62, 65. Perdue and Ellingson

were unable to access funds for extended periods of time as a result of their payment cards being cancelled. ¶¶ 15, 39–40. And both Savoie and Grewing were the victims of fraud. ¶¶ 33, 61. Such allegations readily satisfy the Illinois CFA's "actual damage" requirement and the "ascertainable loss of money or property" requirement imposed by the Iowa CFA and the MMPA. Hy-Vee's position to the contrary (Def. Br. at 25–26) rests entirely on out-of-circuit authority and is at odds with *Dieffenbach*.

The *Dieffenbach* decision also recognizes that amounts spent on credit monitoring in the wake of a data breach constitute "real and measurable" actual damages. *Dieffenbach*, 887 F.3d at 829–30. For example, after learning of the breach, Grewing purchased a TransUnion Credit Monitoring Plan at a cost of $9.95 per month. ¶ 63. These amounts satisfy the MMPA's ascertainable loss requirement—a fact Hy-Vee does not even attempt to rebut.

Experiencing credit card fraud or debit card fraud also constitutes economic loss under Iowa and Missouri law. ¶¶ 33, 61. Nothing in the complaint indicates these charges were reimbursed. Hy-Vee's argument that the Court should draw inferences against Plaintiffs is contrary to federal pleading requirements and should be rejected. *See In re Marriott*, 2020 WL 869241, at *37 (rejecting the same argument and characterizing the argument as "turn[ing] the pleading requirement on its head").

Hy-Vee mischaracterizes the Iowa and Missouri Plaintiffs' benefit-of-the-bargain damage allegations. ¶¶ 29, 35, 43, 66. These Plaintiffs do not allege "price inflation" damages, as Hy-Vee incorrectly suggests. Def. Br. at 26. Rather, Plaintiffs allege that Hy-Vee omitted material facts from these individuals when they used their payment cards to make purchases at Hy-Vee locations. Had Plaintiffs known of Hy-Vee's failure to implement reasonable security measures to protect their Card Information, they would not have made purchases at Hy-Vee using their payment cards.

Courts have found the same allegations sufficient to satisfy the MMPA's ascertainable loss of money or property requirement. *See In re Marriott*, 2020 WL 869241, at *35 (benefit-of-the-bargain losses sufficient to constitute a loss of money or property); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 999–1000 (S.D. Cal. 2014).

### 4. Plaintiffs' Allegations Establish Causation

Hy-Vee's argument that the Iowa and Illinois CFA claims fail due to lack of causation is unpersuasive. The Illinois and Iowa CFAs require only that a plaintiff's damage occur as a result of an unfair or deceptive act or practice. *See, e.g., Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019); Iowa Code § 715H. This is adequately pleaded here.

Hy-Vee engaged in unfair acts or practices in violation of the Illinois and Iowa CFAs by failing to implement and maintain reasonable security measures to protect Class Members' sensitive Card Information. ¶¶ 195, 228. As the direct and foreseeable result of Hy-Vee's failures, Plaintiffs' Card Information was compromised and they suffered damages and ascertainable losses. ¶¶ 205, 233. Hy-Vee does not challenge that fact in its submission.

Plaintiffs also incurred actual damages and ascertainable losses as a result of Hy-Vee's deceptive acts and practices. Had Plaintiffs not used their payment cards to make purchases at Hy-Vee locations, their Card Information would not have been stolen, they would not have lost access to monetary funds for any period of time, they would not have been required to spend time communicating with their bank and credit card companies regarding the breach, they would not have been deprived of the benefit-of-their-bargain, and they would not have suffered debit or credit card fraud. ¶¶ 18, 23, 29, 35, 43, 50, 57, 66, 71, 77. Such allegations readily satisfy the "as a result of" causation requirement of the Illinois CFA and Iowa CFA.

Hy-Vee also misstates Illinois law. "[R]eliance is not an element of statutory consumer fraud [in Illinois]." *Vanzant*, 934 F.3d at 739 (quoting *Connick v. Suzuki Motor Co.*, 675 N.E. 2d 584, 593 (Ill. 1996)). In quoting certain language from the *De Bouse* decision (Def. Br. at 27), Hy-Vee omits that the court went on to recognize that whether "the mere selling of a product constitutes an actional statement under the [Illinois CFA] if a plaintiff can prove the defendant concealed material facts" is dependent on the product at issue. *De Bouse v. Bayer*, *Inc.*, 922 N.E.2d 309, 317–18 (Ill. 2009). Hy-Vee's position that a plaintiff must allege that they saw and were deceived by a statement or advertisement in order to satisfy the Illinois CFA's causation requirement is also inconsistent with the Illinois Supreme Court's recognition that "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes" constitutes a violation of the Illinois CFA. *Connick*, 675 N.E. 2d at 504. Here, Plaintiffs directly interacted with Hy-Vee in making purchases, Hy-Vee had the opportunity to (but did not) disclose the material fact of its data security failures, and Plaintiffs were damaged as a result of such failures.

### 5. Plaintiffs Adequately State Omissions-Based Claims Under the Minnesota DTPA, Minnesota CPA, and the MMPA.

Hy-Vee contends that Trang's Minnesota consumer fraud claims and Murray's and Grewing's MMPA claim should be dismissed because they fail to allege that Hy-Vee made misstatements in connection with selling data security services. Def. Br. at 28. This misapprehends the case and Plaintiffs' claims. This case is not about the sale of data security services—Plaintiffs' claims arise from Hy-Vee's omission of its data security failures in its point of sale systems at its retail locations.[4]

---

[4] Hy-Vee does not (and cannot) dispute that its sale of groceries, carryout food, coffee, gas, etc. (¶ 82) is a sale of "merchandise." *See, e.g.,* MINN. STAT. § 325F.68.

Trang, Murray, and Grewing have each alleged multiple acts and forbearances that constitute omissions under Minnesota and Missouri law in connection with sales made at Hy-Vee locations. *E.g.*, ¶¶ 123 (Hy-Vee was on notice of its data security shortcomings); 257 (Hy-Vee omitted disclosure of inadequate data security); 265 (Hy-Vee failed to disclose the breach in a timely manner). Plaintiff Trang alleges that she made numerous purchases at Minnesota-based Hy-Vee locations (¶ 45) and that she would not have done so had she known of Hy-Vee's undisclosed security vulnerabilities (¶ 50). Plaintiffs Murray and Grewing make similar allegations about their purchases in Missouri. ¶¶ 25, 29,59-60, 66. These allegations are routinely found to state claims under the pair of Minnesota statutes and the Missouri MPA, including in other high-profile data breach cases. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1166 (D. Minn. 2014) (denying motion to dismiss Minnesota DTPA and CPA claims based upon similar allegations in massive payment card data breach case); *In re Sony*, 996 F. Supp. 2d at 999 (denying motion to dismiss MMPA claim premised on allegations that Sony omitted inadequate data security); *Chipotle*, 344 F. Supp. 3d at 1255 (affirming recommendation that motion to dismiss omissions-based MMPA claim should be denied in card data breach case). There is no reason why these claims should not proceed here as well.

Hy-Vee places undue reliance on the out-of-circuit decision in *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718-19 (8th Cir. 2017). *See* Def. Br. at 28. The Eighth Circuit there acknowledged that to be actionable under the MMPA, "the alleged unlawful act must occur in relation to a sale of merchandise . . . ." *Id.* at 719. Murray and Grewing make such allegations. ¶¶ 25, 59-60. But the Eighth Circuit in *Kuhns* appears to have concluded that merchandise is limited to "data security services," and that the defendant—a securities brokerage firm—was required to sell that type of service in order for it to be susceptible to consumer fraud claims relating to a data breach. That

11

outcome is untenable: the result of this would be that the only viable data breach class action lawsuits would be those asserting claims against companies that sell data security services. The multitude of other motion to dismiss decisions in retail payment card data breach cases makes clear that this is incorrect. *See Chipotle*, *Target*, *In re Sony*, *supra*. The *Kuhns* decision should be given no consideration.

### 6.   The Illinois and Minnesota Plaintiffs Allege Risk of Future Harm

 Contrary to Hy-Vee's contentions, Plaintiffs Perdue (Illinois), Davis-Berg (Illinois),[5] and Trang (Minnesota) make numerous allegations of risk of future harm resulting from the breach. For example, Plaintiffs allege that stolen Card Information can be used at some time in the future to perpetrate identity theft (¶¶ 85, 114), and to drain debit card-linked bank accounts or make "clone" cards (¶ 116). Numerous courts, including the Seventh Circuit, recognize the validity of allegations concerning the risk of imminent future injury posed by the type of breach involved in this case. *See, e.g., Remijas v. Neiman Marcus Group LLC*, 794 F.3d 688, 693 (7th Cir. 2015) ("Why else would hackers . . . steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities."); *see also Attias v. Carefirst, Inc.*, 865 F.3d 620, 628-29 (D.C. Cir. 2017), *cert denied* 138 S. Ct. 981 (Feb. 20, 2018) (reversing dismissal where "an unauthorized party has already accessed personally identifying data . . . , and it is much less speculative—at the very least, it is plausible—to infer that this party has both the intent and the ability to use that data for ill").

---

[5] Hy-Vee separately argues that Davis-Berg's Illinois CFA and DTPA claims should be dismissed because her claims amount to extraterritorial application of those two statutes, given that her purchase was made in Kansas. Def. Br. at 30. It contends that a lack of a nexus to Illinois dooms these claims. *Id*. But Plaintiff Davis-Berg has nexus to Illinois—she is an Illinois resident. ¶ 21. Should the Court agree with Hy-Vee, Plaintiffs request leave to re-plead claims on behalf of Ms. Davis-Berg.

Simply because Hy-Vee took a *post hoc* step to remove the malware intrusion or that some Plaintiffs canceled their cards (Def. Br. at 29) does not remove the risk that fraudsters can use the information obtained in the breach to perpetrate future frauds. *See Chipotle*, 2018 WL 3653173 at *9 ("[T]he court will infer from the allegations that additional personal information was taken in the Chipotle breach that could enable fraudulent accounts to be opened in [plaintiff's] name, or other benefits to be taken fraudulently in her name. . . . Because [plaintiff] . . . does not know for certain whether PII beyond her payment card information was stolen, she plausibly alleges a certainly impending harm or substantial risk thereof"), *adopted by, in part, rejected by, in part*, 344 F. Supp 3d at 1243 (affirming recommendation that the plaintiff "does sufficiently allege a substantial risk of future injury").[6]

Plaintiffs' detailed allegations concerning prospective ancillary harms resulting from the breach—above and beyond fraudulent point of sale transactions—suffice to plead future harm and to sustain their claims for injunctive relief under the Minnesota DTPA and Illinois DTPA. *See, e.g., In re Target*, 66 F. Supp. 3d at 1161 (concluding that arguments concerning absence of allegations of future harm "are premature. Plaintiffs have plausibly pled that their injuries will be redressed by the injunctive relief they seek, and at this stage, that is all that is required.").

## C. Plaintiffs State Viable Claims Under the Iowa and Kansas Data Breach Statutes

Hy-Vee contends that the Iowa Personal Information Security Breach Protection Act, Iowa Code § 715C.2 ("Iowa PISBPA") and the Kansas Protection of Consumer Information Statute, Kan. Stat. § 50-7a02 ("Kansas PCI") do not permit private causes of action. Def. Br. at 19–20. But

---

[6] Hy-Vee's argument concerning the absence of allegations of future harm to support a request of injunctive relief appear to be a disguised standing challenge. But allegations of imminent future harm suffice for standing purposes. *See Remijas*, 794 F.3d at 692 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)) ("Allegations of future harm can establish Article III standing if that harm is 'certainly impending,' . . . ."). Hy-Vee "is of course free to pursue the fact issues regarding . . . standing" during discovery. *Chipotle*, 2018 WL 3653173, at *25.

recent decisions interpreting these statutes in other large data breach cases have denied motions to dismiss these claims, finding that the statutes are ambiguous as to whether they create a private right of action. *See, e.g., In re Target*, 66 F. Supp. 3d at 1169 (quoting Iowa Code § 715C.2(8)(a)) (denying motion to dismiss Iowa PISBPA claim because it "is at least ambiguous as to whether private enforcement [of that statute] is permissible . . . ."); *id.* (same, Kansas PCI); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1339 (N.D. Ga. 2019) (concurring with *In re Target* and denying motion to dismiss Iowa PISBPA claim); *id.* at 1341 (same; Kansas PCI); *see also* Iowa Code § 715C.2(8)(b) ("rights and remedies available under this section are cumulative to each other and to any other rights and remedies available under the law."); Kan. Stat. Ann. § 50-7a02(g) ("[t]he provisions of this section *are not exclusive*" (emphasis added)).

Hy-Vee does not even address *In re Target* and *Equifax,* let alone cite any case contradicting their reasoning. Its arguments for dismissal should, accordingly, be rejected. *See Equifax*, 362 F. Supp. 3d at 1339, 1341 (denying motion to dismiss Iowa PISBPA and Kansas PCI claims because defendant "provided no cases contradicting [*In re Target*'s] reasoning" regarding ambiguities in statutory language; finding that "the *Target* holding is not inconsistent with the language of the [Iowa] statute"; and finding that defendant provided no authority countering the permissive "non-exclusive" language in the Kansas PCI).

Hy-Vee also argues that the CAC fails to plead damages caused by its delay in notifying consumers of the breach. Def. Br. at 20. Not so. Plaintiff Savoie alleges she received notification from her bank—not Hy-Vee—a month after the breach, but by then it was too late: fraudsters had all they needed to make fraudulent transactions in her name. ¶¶ 32, 33. Plaintiff Ellingson never received direct notice from Hy-Vee, and her and Plaintiff Savoie have endured financial burdens and spent many hours dealing with the breach and monitoring accounts. ¶¶ 33-34, 38-41. The

Williams Plaintiffs allege they did not receive direct notice of the breach from Hy-Vee until nearly three months after it was announced. ¶ 54. In the interim, they had a large sum of money stolen from their account. ¶ 53. The Williams Plaintiffs were also injured through the loss of access to their finances and the lost time spent filing a police report and communicating with their bank. ¶¶ 53, 54.

The Kansas PCI requires that data breach defendants provide notice "in the most expedient time possible and without unreasonable delay." *See* Kan. Stat. Ann. § 50-7a02(a). The Iowa PISBPA similarly requires that consumer notification shall be made in the "most expeditious manner possible and without unreasonable delay." Iowa Code § 715C.2. Plaintiffs' harms were exacerbated by Hy-Vee's failure to timely provide prompt and timely notice in satisfaction of the Iowa and Kansas statutes. Plaintiffs allege that this failure was a violation of the two statutes. Hy-Vee's challenge that damages did not result from the delay in notification and concerning its ability to provide (or manner of providing) notice to Plaintiffs entails factual issues requiring development in discovery. *See Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *6 (N.D. Ill. Sept. 22, 2016) (noting that a plaintiff is "not required to prove his case at the pleading stage . . . ."); *Chipotle*, 2018 WL 3653173, at *22 (D. Colo. Aug. 1, 2018) (holding that issue of what "should be deemed a damage" is a "fact issue . . . [t]hat cannot be resolved on the present motion.").

### D. The Law of the Place of Purchase Applies to Plaintiffs' Common Law Claims

#### 1. Outcome Determinative Conflicts Exist

Plaintiffs' common law claims should be governed by the law of the state where the alleged injury occurred—that is, where their transactions at physical Hy-Vee locations took place. As the Seventh Circuit has recognized, "the choice-of-law issues in nationwide class actions are rarely so

uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation." *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 750 (7th Cir. 2006). Consistent with that approach, numerous courts presiding over data breach cases have presumed conflicts between the laws and interests of various states with respect to negligence claims. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 15-MD-2633, 2019 WL 3410382, at *13 (D. Or. July 29, 2019); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486 (D. Minn. 2015). The same approach is appropriate here.

In the event the Court decides to engage in a more detailed inquiry, significant differences exist amongst the laws of Illinois, Iowa, Kansas, Minnesota, Missouri, and Wisconsin with respect to negligence, negligence *per se*, and unjust enrichment. For example, Illinois applies a four-factor foreseeability-based test in determining whether duty exists in a negligence action, whereas under Iowa and Wisconsin negligence law "foreseeability relates to the question of the breach, not a question of the duty of care." *Lees v. Carthage College*, 714 F.3d 516, 523 (7th Cir. 2013) (citing *Behrendt v. Gulf Underwriters Ins. Co.*, 768 N.W.2d 568, 575 (Wis. 2009)); *Hoyt v. Gutterz Bowl & Lounge LLC*, 829 N.W.2d 772, 775 (Iowa 2013). These determinative distinctions control whether the foreseeability of a risk must be assessed by the court (Illinois) or by the finder of fact when determining whether the defendant failed to exercise reasonable care (Iowa and Wisconsin). *Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009).

Under Kansas and Minnesota negligence law, businesses have a duty to safeguard their customers' personal information. *See In re Target Corp. Consumer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1310 (D. Minn. 2014) (concluding that Minnesota law imposes a duty upon businesses to safeguard customer data); *Hapka v. Carecentrix, Inc.*, No. 16-cv-2372, 2016 WL 7336407, at *1 (D. Kan. Dec. 19, 2016) (same as to Kansas). An Illinois appellate court came to

16

the opposite conclusion when addressing the same issue, reasoning that the Illinois Personal Information Protection Act ("PIPA") reflected the Illinois legislatures "intent to limit defendants' duty to providing notice." *Cooney v. Chicago Public Schools*, 943 N.E.2d 23, 27-28 (Ill. App. 2010). The Illinois legislature amended PIPA in 2017 to expressly add a duty to safeguard personal information. 815 ILCS § 530/45. To Plaintiffs' knowledge, no court has affirmatively analyzed that amendment's effect on the duty analysis of an Illinois negligence claim in a data breach case.

Illinois interprets the economic loss rule differently than Iowa, Kansas, Minnesota, Missouri, and Wisconsin. *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1145 (D. Minn. 2016) (recognizing that Minn. State § 604.101 abrogates the common law version of the doctrine and provides that the doctrine applies only to product defect tort claims and common law misrepresentation claims); *Rand Constr. Co. v. Dearborn Mid-West Conveyor Co.*, 944 F. Supp. 2d 1042, 1062 (D. Kan. 2013) (Kansas economic loss rule does not bar negligence claims absent some contractual duty); *Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 616 (8th Cir. 2014) (Missouri's "economic loss doctrine prohibits a party from seeking to recovery in tort for economic losses that are contractual in nature"); *Stuart v. Weisflog's Showroom Gallery, Inc.*, 753 N.W.2d 462, 473 (Wis. 2008) (economic loss doctrine limited to product liability context when one party to a contract seeks "damages resulting from inadequate value because the product is inferior and does not work for the general purpose for which it was manufactured and sold"). While Illinois' Supreme Court has recognized that the "economic loss doctrine does not bar recovery in tort for the breach of a duty that exists independently of a contract," *Congregation of the Passion v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994), certain courts applying the doctrine in data breach cases have interpreted that phrase as being limited to professional malpractice claims. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 530 (N.D. Ill. 2011);

*see also In re Marriot*, 2020 WL 869241, at *14-20 (discussing the development of the economic-loss doctrine in Illinois and the cognitive dissonance created by applying it to the context of data breach litigation).

Outcome determinative differences also exist for negligence *per se*. Illinois requires that the concerned statute or ordinance be intended to impose strict liability, but does not require that the legislature express that the concerned statute or ordinance is intended to serve as the basis for civil liability. *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (1999). Kansas and Wisconsin require that the legislature express that the concerned statute is intended to serve "as a basis for the imposition of civil liability." *Totsky v. Riteway Bus Serv., Inc.*, 607 N.W.2d 637, 644 (Wis. 2000); *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004). And Minnesota and Missouri permit negligence *per se* claims regardless of whether the concerned statute or ordinance contains a private right of action or is strict liability. *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. Ct. App. 2018); *Anderson v. State,* 693 N.W.2d 181, 190 (Minn. 2005).

Illinois and the concerned states also differ in their approaches to unjust enrichment. Kansas, Missouri, Iowa, and Minnesota recognize unjust enrichment as an independent cause of action. *Corvias Military Living, LLC v. Ventamatic, Ltd.*, 450 P.3d 797, 804 (Kan. 2019); *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011); *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149–50 (Iowa 2011); *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838–39 (Minn. 2012). In contrast, courts have found that unjust enrichment is not a stand-alone claim in Illinois, but "a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence." *Benson*, 944 F.3d at 648. These differences are outcome determinative.

### 2. The Law of the State of Purchase Governs

Illinois applies a "strong presumption" that the law of the state where the injury occurred will govern torts claims. *See Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007). This presumption "may be overcome only by showing a more or greater significant relationship to another state." *Id*. Each Plaintiff suffered injury in the State in which they used a payment card to make a purchase at a compromised Hy-Vee location. As a result, Illinois law applies to Perdue's claims; Iowa law applies to the claims of Ellingson and Savoie; Kansas law applies to the claims of Davis-Berg, Ward, and Harley and Mary Williams; Minnesota law applies to Trang's claims; Missouri law applies to the claims of Grewing and Murray; and Wisconsin law applies to Davis's claims.

### E. Plaintiffs' Implied Contract Claims Are Adequately Pleaded

### 1. Plaintiffs Allege the Existence of an Implied Contract

Hy-Vee incorrectly argues that Plaintiffs fail to plead the existence of an implied contract.[7] It is clearly implied in Plaintiffs' accepting Hy-Vee's offer to sell, by the use of credit and debit cards, and that their information is given for the merchant's use only. ¶ 105. Hy-Vee invited the class to purchase food, gas, and other items using their credit or debit cards, and the class accepted this offer to do so. ¶¶ 175-76. Plaintiffs plead that inherent in their purchases, Hy-Vee agreed to take reasonable measures to protect the security of Plaintiffs' and Class Members' Card Information. ¶ 111-12, 124, 175-76. Hy-Vee in fact promises as much on its website: "Hy-Vee . . . is committed to respecting and protecting our customers' privacy . . . . We take the issue of

---

[7] Hy-Vee acknowledges – and Plaintiffs agree – that there is no conflict of laws related to the basic requirements of an implied contract. *See* Def. Br. at 25 (citing cases).

privacy very seriously and value the trust you place in us each time you visit our stores and use the services we provide." ¶ 105 (quoting Hy-Vee's privacy policy posted on its website).

Whether an implied contract exists in a data breach case is a question of fact. *In re Hannaford Bros. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 118 (D. Me. 2009). A jury can find that there are certain implied terms, including that the retailer would take reasonable measures to protect the information on the plaintiffs' credit and debit cards. *Id.* In an analogous case, the First Circuit affirmed the district court's denial of the motion to dismiss the implied contract claim, holding that when a customer uses a credit card in a commercial transaction, the customer does not expect that a merchant will allow unauthorized third-parties to access that sensitive data, and that a jury could reasonably conclude that an implicit agreement to safeguard the data is necessary to effectuate the contract. *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011). Other courts, including this one, have followed *Hannaford* and denied motions to dismiss implied contract claims in consumer data breach cases on this basis. *See, e.g., In re Michaels*, 830 F. Supp. 2d at 531 (allegations demonstrate the existence of an implied contract which obligated defendants to take reasonable measures to protect plaintiffs' financial information); *In re Marriott*, 2020 WL 869241, at *28-29, (finding implied contract claims sufficiently pled in a large data breach case); *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-CV-02129-MSK-NYW, 2016 WL 8578096, at *11 (D. Colo. June 20, 2016), report and recommendation adopted, No. 15-CV-02129-MSK-NYW, 2016 WL 8578252 (D. Colo. Sept. 21, 2016) (finding that it should not determine on a motion to dismiss whether defendants' sales to plaintiffs included an implied term that defendants would take reasonable measures to protect plaintiffs' private information and recommending declining to dismiss plaintiffs' breach of implied contract claim); *In re Target*, 66 F. Supp. 3d at 1176-77 (Target's promise to safeguard plaintiffs'

personal information plausibly pleads an existence of an implied contract); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *9 (W.D. Ky. Dec. 1, 2017) (same).

Under nearly identical circumstances, this Court held that the plaintiffs had stated a claim for breach of implied contract under Illinois law. *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1070 (C.D. Ill. 2016) (rejecting *Lovell v. P.F. Chang's China Bistro, Inc.*, No. C14-1152RSL, 2015 U.S. Dist. LEXIS 112101 (W.D. Wash. Mar. 27, 2015)). In *Irwin*, plaintiffs alleged that they entered into implied contracts with Jimmy John's to safeguard their personal information and, in the event of a breach, timely notify them. *Id.* at 1070. The Court held that "when the customer uses a credit card for a commercial transaction, he intends to provide the data to the merchant, and not to an unauthorized third party." *Id.* Judge Baker found that there was an implicit agreement to safeguard the customer's information to effectuate the contract. *Id.* As in *Irwin*, Plaintiffs here have pleaded offer, acceptance, consideration and a meeting of the minds such that they have plausibly pleaded the existence of an implied contract obligating Hy-Vee to take reasonable measures to protect the Plaintiffs' private information and to timely notify them of a breach. ¶¶ 111-12, 124, 175-76. Plaintiffs also allege that they would not have entered into their transactions with Hy-Vee had they known that it would not adequately protect their information. ¶¶ 18, 23, 29, 35, 43, 50, 57, 66, 71, 77.

While there are a few cases going the other way, these decisions are in the minority. In fact, Hy-Vee's exact argument made by the same counsel and citing the same handful of cases (including *Lovell v. P.F. Chang's*) has been recently rejected by multiple courts. *See Chipotle*, 344 F. Supp. 3d at 1247-48 (after recognizing some conflicting decisions "the Court finds that whether Defendant's sales to Plaintiffs included an implied term about data security cannot be decided at

this juncture"); *Bray v. Gamestop Corp.*, 1:17-cv-1365, 2018 U.S. Dist. LEXIS 226220, at *16 (D.

Del. Mar. 16, 2018) (same).[8]

Here, Plaintiffs have plausibly plead a claim for breach of implied contract.

### 2. Plaintiffs Plead the Existence and Breach of Contracts to Which Plaintiffs Were Intended Third-Party Beneficiaries

Hy-Vee argues that Plaintiffs' third-party beneficiary contract claim fails because "[t]he

Complaint is devoid of the basic facts necessary to put Hy-Vee on notice of what contract it

allegedly breached." Def. Br. at 27. But Hy-Vee has not cited any authority establishing that

Plaintiffs are required to attach the allegedly breached contracts to their complaint in order to state

a claim. That is because no such requirement exists. *See Cummings v. Energy Int'l Servs., LC*, 271

F. Supp. 3d 1182, 1189 (E.D. Cal. 2017) ("A contract may be explained by reference to the

circumstances under which it was made, and the matter to which it relates."). Hy-Vee's only

citation is to a case that conspicuously does not mention any such requirement. *See* Def. Br. at 27

(quoting *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("Under Illinois

law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: '(1)

the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3)

a breach by the defendant; and (4) resultant damages.'"). Plaintiffs have done this. Merchants such

as Hy-Vee enter into agreements with credit card companies in order to be able to accept payment

cards. These agreements obligate the merchants to take security measures to protect this

information. Hy-Vee breached by not taking such precautions. The individuals whose information

Hy-Vee was required to protect are clearly intended third-party beneficiaries. This is sufficient for

the pleading stage. Hy-Vee knows what agreements Plaintiffs are referring to and Plaintiffs should

---

[8] Further, Hy-Vee's argument about whether cash purchasers at its stores were charged the same amount as class members is irrelevant. Any implied contract that class members had (or did not have) with Hy-Vee by virtue of paying in cash is not at issue.

not be punished because they do not have access to agreements between Hy-Vee and credit card companies without the benefit of discovery.

### F.  Plaintiffs Adequately State a Claim for Unjust Enrichment

Plaintiffs plausibly allege a claim for unjust enrichment in the alternative to their implied contract claim.[9] "Courts have concluded that the failure to secure a plaintiff's data can give rise to an unjust enrichment claim." *Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472 (PKC), 2019 WL 2023713, at *12 (S.D.N.Y. May 7, 2019). "They reason that a defendant has accepted the benefits accompanying plaintiff's data, but does so at the plaintiff's expense by not implementing adequate safeguards, thus making it 'inequitable and unconscionable' to permit defendant to retain funds that it saved by 'shirking data-security' and leaving the plaintiff 'to suffer the consequences.'" *Id.* (citing *Sackin v. Transperfect Global, Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017); *In re Target Corp.,* 66 F. Supp. 3d at 1178); *see also In re Premera,* 198 F. Supp. 3d at 1201 (finding plaintiffs' unjust enrichment claims sufficient to withstand a motion to dismiss where "Plaintiffs allege that they made payments to Premera and that under the circumstances it is unjust for Premera to retain the benefits received without payment"); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *27–29 (N.D. Cal. May 27, 2016); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012).

---

[9] To the extent Hy-Vee urges that Plaintiffs' claim should be dismissed because it is duplicative of their implied contract claim, where the existence and terms of a contract are in dispute, Plaintiffs are permitted to plead unjust enrichment in the alternative. *See e.g. Lozada v. Advocate Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U, *¶ 2* (recognizing that plaintiffs may plead unjust enrichment in the alternative to a breach of contract claim); *Marty H. Segelbaum, Inc., v. MW Capital, LLC*, 673 F. Supp. 2d 875, 879 n.3 (D. Minn. 2009) (same); *Kehrer Bros. Constr., Inc. v. Intercoastal Roofing Sols.*, LLC, No. 3:13-CV-0085-JAJ, 2013 WL 11740243, at *2 (S.D. Iowa Dec. 19, 2013) (same); *Doug Volz v. Provider Plus, Inc., Jeff Serafin*, No. 4:15CV0256 TCM, 2015 WL 3621113, at *2 (E.D. Mo. June 9, 2015) (same); *Boulet v. Nat'l Presto Indus., Inc.*, No. 11-CV-840-SLC, 2012 WL 12996297, at *11 (W.D. Wis. May 7, 2012) (same); *Mendy v. AAA Ins.*, No. 17-2322-DDC-GLR, 2017 WL 4422648, at *7 (D. Kan. Oct. 5, 2017) (same).

In *Rudolph*, the district court found that the plaintiff had plausibly alleged that (a) she purchased merchandise from Saks using her debit card, (b) that she would not have purchased the merchandise if Saks had not accepted the debit card, and (c) that the purchase of merchandise conferred a benefit on Saks. *Id.* The court rejected the defendants' contention that the plaintiff could not state a claim for unjust enrichment because she did not allege that the items she acquired were defective or worth less in value than the price she paid, because plaintiff's unjust enrichment claim was "not directed to the value of the goods received" but rather that "defendants profited from her purchase but by failing to secure her card data, they did not provide full compensation for the benefit [the data] provided." *Id.*[10] Thus, it would be "unjust" for defendants "to retain" any benefit the plaintiff conferred, which sufficed to allege a claim for unjust enrichment. *Id.*

In *In re Target*, the court likewise denied the defendant's motion to dismiss plaintiffs' unjust enrichment claim based on plaintiffs' "would not have shopped" theory. *In re Target*, 66 F. Supp. 3d at 1178. The court concluded

> [i]f Plaintiffs can establish that they shopped at Target after Target knew or should have known of the breach, and that Plaintiffs would not have shopped at Target had they known about the breach, a reasonable jury could conclude that the money Plaintiffs spent at Target is money to which Target 'in equity and good conscience' should not have received.

*Id.*

Here, as in *In re Target* and *Rudolph*, Plaintiffs adequately state a claim for unjust enrichment. Plaintiffs allege that they conferred a monetary benefit upon Hy-Vee in the form of payment for the purchase of food, gasoline, and more; Hy-Vee appreciated or had knowledge of the benefits conferred upon it; the monies that Plaintiffs paid to Hy-Vee were supposed to be used

---

[10] For these same reasons, Hy-Vee's reliance on *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-md-2586, 2018 WL 1189327, at *16 (D. Minn. Mar. 7, 2018) and *Remijas*, 794 F.3d at 694-95 is inapposite and should be rejected. Def. Br., at 18.

by Hy-Vee, in part, to pay for the administrative costs of reasonable data privacy and security practices; and under principles of equity and good conscience, Hy-Vee should not be permitted to retain the money because Hy-Vee failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiffs expected and were otherwise mandated by federal, state, and local laws and industry standards. ¶¶ 292-99. Further, Plaintiffs allege that, had they known that Hy-Vee would not adequately protect their sensitive Card information, they would not have made a purchase at Hy-Vee using their payment cards. *E.g.,* ¶¶ 18, 23, 29, 35, 43, 50, 57, 66, 71, 77. Accordingly, Hy-Vee is in possession of monies that, in equity and good conscience, it should not have received or be permitted to retain. As such, Hy-Vee's motion to dismiss these claims should be denied.

### G. Plaintiffs Have Successfully Alleged Claims for Negligence

#### 1. The Duty to Safeguard Personal Information

In a few short sentences, Hy-Vee makes the sweeping argument that Count I fails as to all Plaintiffs because Illinois law does not recognize a duty to safeguard personal information. Its position is incorrect as to Illinois law. Hy-Vee further ignores the law of Minnesota, Kansas, Wisconsin and Missouri, which are addressed below.

##### a. Illinois

Subsequent to *Cooney v. Chicago Public Schools*, the Illinois legislature amended PIPA in 2017 to expressly add a duty to safeguard personal information. To Plaintiffs' knowledge, no court has affirmatively analyzed that amendment's effect on the duty analysis of an Illinois negligence claim in a data breach case, but it is clear that the amendment creates a statutory duty to safeguard personal information. 815 ILCS § 530/45.

### b.  Minnesota

Courts applying Minnesota law have clearly recognized a legislatively-endorsed duty to safeguard personal information. In *In re Target,* the court found that "Plaintiffs have plausibly alleged a duty on Target's part is bolstered by the existence of Minnesota's Plastic Card Security Act," and that "[i]mposing a duty on Target in this case will aid Minnesota's policy of punishing companies that do not secure consumers' credit-and debit-card information." 64 F. Supp. 3d at 1310. Hy-Vee failed to cite any authority to the contrary.

### c.  Wisconsin

Wisconsin law takes an extremely broad approach to the concept of duty. As stated by the Wisconsin Supreme Court:

> Every person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care. In Wisconsin a duty to use ordinary care is established whenever it is foreseeable that a person's act or failure to act might cause harm to some other person. Under the general framework governing the duty of care, a " 'person is not using ordinary care and is negligent, if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.'

*Alvarado v. Sersch*, 2003 WI 55, ¶¶ 14-15, 262 Wis. 2d 74, 82, 662 N.W.2d 350, 353–54 (internal citations omitted). Hy-Vee owed Plaintiffs a duty because it failed to exercise ordinary care in maintaining the security of its payment systems.

### d.  Kansas and Missouri

Courts have recognized that Kansas law provides a duty to safeguard personal information. In *Hapka*, plaintiff brought a claim for common law negligence against her former employer for a data breach. 2016 WL 7336407, at *1. The Court recognized a common law duty to safeguard personal information. *Id.* at 5. Under Kansas law, "To find a legal duty to support a negligence

claim, (1) the plaintiff must be a foreseeable plaintiff and (2) the probability of harm must be foreseeable." *Manley v. Hallbauer*, 308 Kan. 723, 726, 423 P.3d 480, 483 (2018).

As in Kansas, under Missouri law, the question of whether a business owner owes a duty to protect its customers from criminal attacks of third parties depends on foreseeability. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. 1988). "The touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Id*.

In this case, Hy-Vee knew that it was collecting sensitive financial information from Plaintiffs and also knew or should have known that hackers were using malware to target retailer customer card information. ¶¶ 120-122.

### e.   The FTC Act is a Proper Basis for a Negligence *Per Se* Claim

Hy-Vee ignores Plaintiffs' actual negligence *per se* claims, which allege that Hy-Vee violated Section 5 of the "FTC Act (and similar state statutes)" and seeks dismissal only of the former. ¶¶ 164, 165, 167, 168. In arguing that Section 5 of the FTC Act cannot serve as a basis for a negligence *per se* claim in a data breach case, Hy-Vee plainly ignores the FTC's fifteen-year history of prosecuting companies for Section 5 violations for failing to protect private customer information. *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015).

Courts applying similar state laws have found that violations of Section 5 of the FTC Act can serve as a basis for negligence *per se* allegations:

> The failure to maintain reasonable and appropriate data security for consumers' sensitive personal information can constitute an unfair method of competition in commerce in violation of the Federal Trade Commission Act. The CAC here adequately pleads a violation of Section 5 of the FTC Act, that the Plaintiffs are within the class of persons intended to be protected by the statute, and that the harm suffered is the kind the statute meant to protect.

27

*In re Equifax*, 362 F. Supp. 3d at 1327. *See also In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016); *In re Arby's Rest. Grp. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *8 (N.D. Ga. Mar. 5, 2018).

Hy-Vee also argues that "Plaintiffs do not allege any injury that the FTC was designed to prevent or that their injury resulted from a hazard that the FTC was designed to protect from." MTD, p. 8. Of course, Section 5 of the FTC Act, among other things, was designed precisely to protect consumers from unfair and deceptive trade practices. *See generally,* 15 U.S. Code § 45. In enacting Section 5 of the FTC Act, Congress "charged the FTC with protecting consumers as well as competitors." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972).

Finally, Hy-Vee argues that Kansas and Wisconsin law provide that only a statute that creates a private right of action can be used to assert a negligence *per se* claim. This argument also fails. The Kansas Supreme Court has held that the alleged violation of a statute that does not include a private right of action can successfully allege both the duty and breach elements of negligence. *Shirley v. Glass*, 308 P.3d 1, 7 (Kan. 2013).

The Wisconsin Supreme Court interprets Wis. Stat. §§ 100.18 (which plaintiffs have pled both as a basis for negligence *per se* and as an independent claim) in accordance with the FTC Act. *See Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 256 (Wis. 2004) (recognizing the Wisconsin Supreme Court has relied on the Federal Trade Commission in analyzing deceptive trade practices). Wis. Stat. §§ 100.18 provides a private right of action for deceptive trade practices and is a proper basis for negligence *per se*.

Hy-Vee also argues that Illinois law provides that a statute must be strict liability to serve as a predicate for negligence *per se*. Hy-Vee cites no authority at all for the contention that Section

28

5 is not a strict liability statute. The required level of scienter for a Section 5 violation depends on

the relief sought; when the Commission does not seek restitution or monetary penalties, Section 5

imposes a strict liability standard. *POM Wonderful, LLC v. F.T.C.*, 777 F.3d 478, 499 (D.C. Cir.

2015). Even if Hy-Vee's argument is accepted, the consequence under Illinois law would not be

dismissal of Plaintiff's claims, but that the alleged violation of a statutory duty constitutes, at least,

*prima facie* negligence. *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004).

### f. The Economic-Loss Doctrine Does Not Bar the Claims of the Illinois, Missouri or Kansas Plaintiffs[11]

Under Missouri law, the economic loss doctrine narrowly bars claims in tort cases where

the duty arose from a contractual relationship. *In re Genetically Modified Rice Litig.*, 666 F. Supp.

2d 1004, 1016–17 (E.D. Mo. 2009). Where a misrepresentation is beyond the scope of contractual

language, the economic loss doctrine does not bar a tort claim. *Web Innovations & Tech. Servs.,

Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928, 933–34 (E.D. Mo. 2014). Some

Courts applying Missouri law have narrowed the doctrine even further, doubting whether it has

any applicability outside of product defect cases. *See e.g. Mea Fin. Enterprises, LLC v. Fiserv

Sols., Inc.*, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013). In

any event, the duties asserted by Plaintiffs do not flow from the written terms of a contract but,

instead, arise from common law and statute. The economic loss doctrine has no applicability here.

Similarly, under Kansas law, the economic loss doctrine analysis revolves around the

source of the alleged duty:

> a breach of contract claim is the failure to perform a duty arising from a contract,
> and a tort claim is the violation of duty imposed by law, independent of the contract.
> But the fact that the parties have a contractual relationship does not necessarily
> control the inquiry because legal duties may arise even though the parties also have
> a contract, so that " '[w]here a contractual relationship exists between persons and

---

[11] Plaintiffs concede their Iowa negligence and negligence *per se* claims.

at the same time a duty is imposed by or arises out of circumstances surrounding or attending the transaction, the breach of the duty is a tort.'

*David v. Hett*, 293 Kan. 679, 701, 270 P.3d 1102, 1114 (2011). The Kansas Supreme Court in *David* decided that the economic loss doctrine should not bar the claims of a homeowner against a contractor because the situation was not adequately governed by warranty, such contracts rarely involve parties of equal bargaining power, and the nature duty being breached (rather than the consequence or damages) should determine whether an action may proceed in tort. *Id.* at 700.

The Illinois Supreme Court has yet to address the economic loss rule in the context of data breaches. As recently observed by the Court in *In re Marriott*, "the Illinois Supreme Court has shown itself to be both diligent and thoughtful in its examination of when the *Moorman* doctrine forecloses suits in tort" and may "decline to extend the doctrine to data breach cases." *In re Marriott* at 39. In *Berry v. City of Chicago,* the plaintiffs sued for, among other things, medical monitoring costs stemming from the City's alleged misconduct causing high levels of lead to leach into water they consumed. 2019 IL App (1st) 180871. The Illinois Appellate Court decided that the plaintiffs' claims for medical monitoring costs were not barred by the *Moorman* doctrine and the Illinois Supreme Court has granted a petition for leave to appeal. Oral argument was held on January 22, 2020. It is likely that a decision in the *Berry v. City of Chicago* case will shape the economic loss doctrine under Illinois law.

## CONCLUSION

For the foregoing reasons, Hy-Vee's motion to dismiss should be denied in its entirety. Should the Court grant any part of Hy-Vee's motion, Plaintiffs respectfully request leave to amend.

Dated: February 28, 2020

Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

  /s/   Benjamin F. Johns
Benjamin F. Johns
Andrew W. Ferich
Alex M. Kashurba
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com
awf@chimicles.com
amk@chimicles.com

Ben Barnow
Erich P. Schork
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph St., Ste. 1630
Chicago, IL 60606
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

*Interim Co-Lead Class Counsel*

William B. Federman
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
WBF@federmanlaw.com

Cornelius P. Dukelow
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (telephone & facsimile)
cdukelow@abingtonlaw.com

Shpetim Ademi
**ADEMI & O'REILLY, LLP**
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com

*Plaintiffs' Steering Committee*

Katrina Carroll
Kyle Shamberg
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone:  312-750-1265
kcarroll@carlsonlynch.com
kshamberg@carlsonlynch.com

Matthew M. Guiney
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
(212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com

Carl Malmstrom
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
111 West Jackson
Suite 1700
Chicago, IL 60604
(312) 984-0000
malmstrom@whafh.com

*Additional Counsel for Plaintiffs
 and the Putative Classes*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed and served via the Court's electronic case filing system on February 28, 2020 on all counsel of record.

*/s/ Benjamin F. Johns*
Benjamin F. Johns