E-FILED
Tuesday, 30 June, 2020  09:50:41 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| NOREEN PERDUE, ELIZABETH DAVIS-BERG, DUSTIN MURRAY, MELANIE SAVOIE, CHERYL ELLINGSON, ANGELA TRANG, HARLEY WILLIAMS, MARY WILLIAMS, GORDON GREWING, MELISSA WARD, and PATRICIA DAVIS, individually and on behalf of all others similarly situated, ) ) ) ) ) ) ) ) | CASE NO. 1:19-cv-01330-MMM |
| Plaintiffs, ) ) | |
| v.                                 ) ) | **JURY TRIAL DEMANDED** |
| HY-VEE, INC.,                      ) ) | |
| Defendant. ) ) | |

**STIPULATION AND ORDER ESTABLISHING
THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND
<u>ELECTRONICALLY STORED INFORMATION</u>**

Pursuant to the agreement reached between Plaintiffs and Defendant herein, this Court adopts and orders the following Protocol for the Production of Documents and Electronically Stored Information ("Protocol") in these proceedings, which binds all parties and their counsel of record in this Action, whether they currently are involved or become so in the future (collectively, the "Parties" and each a "Party"). The failure of this Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

I.      **DEFINITIONS**

a.      "Action" means the above-captioned matter and any and all cases consolidated or coordinated with it.

b.      "Document" and "Electronically Stored Information" ("ESI") shall have the same meaning as the usage of these terms in Federal Rule of Civil Procedure 34(a)(l)(A).

c.      "Email" means an electronic means for sending, receiving, and managing communications via different structured data applications (email client software), including but not limited to Microsoft Outlook, Google Gmail, Yahoo Mail, or Lotus Notes, and the file created or received by such means, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to collect such ESI.

d.      "Instant Messages" means communications involving immediate correspondence between two or more users sent via chat client or SMS, including but not limited to Bloomberg Chat, Google Talk, WhatsApp, Yahoo! Messenger, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Line, Audium, Trillian, Microsoft Lync, Skype, Facebook Messenger, Google Hangouts, or any proprietary instant messaging system, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to preserve or collect such ESI.

e.      "Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

f.      "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

g.      "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as OCR or Extracted Text, should such data be available.

h.      "OCR" means optical character recognition technology.

i.      "Extracted Text" means the text extracted from a native document and includes all header, footer, and document body information, including any hidden content, when available.  A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

j.      "Media" means an object or device, including but not limited to a disc, tape, flash drive, memory card, computer, tablet, smart phone, or other device, on which data is or was stored.

k.      "Parties" collectively shall mean all named parties to any action in these proceedings, including any Party added or joined to any complaint in these proceedings, any third party subject to this Order, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

l.      "Production" or "Produced" includes any exchange of Documents or ESI between the Parties, whether voluntarily or in response to a formal or informal request.

m.      "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI and includes strings of words and phrases joined by proximity and Boolean connectors.

n.     "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) image is an example of a Static Image.

o.     "Structured Data" means ESI stored in a structured format, such as databases or data sets, according to specific form and content rules as defined by each field of the database.

p.     "Predictive Coding/Technology Assisted Review" shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine-learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of a litigation regarding the responsiveness of a subset of documents and extrapolates those judgments to the remaining document collection.  For purposes of this Protocol, Predictive Coding/Technology Assisted Review is synonomous with computer-assisted review, computer-aided review, and content-based advanced analytics or other terms used to refer to search methodologies that rely on machine-based learning to identify responsive documents.

q.     "Unstructured Data" refers to data that either does not have a data structure or has a data structure not easily interpretable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, Email bodies, and image files.

## II.     SCOPE

a.     **General.**  The procedures and protocols outlined herein govern the Production of Documents and ESI by all Parties.  The Parties will take reasonable steps to comply with this agreed-upon Protocol.  Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI ("Producing Party") or a Party requesting Documents or ESI ("Requesting Party").

The production specifications in this Order apply to Documents that are produced in discovery in this Action. To the extent any Party is required to or agrees to produce Documents in this Action that originally were collected or produced in other cases or in government investigations, such Documents may be produced in the same format in which they originally were produced in the other cases or to the government.

To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

b.      **Limitations and Non-Waiver**.  The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine. All Parties preserve their attorney-client privileges, work-product protection, and other privileges. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of Documents and ESI. All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

c.      **Reservation of Rights**.  For the avoidance of doubt, the inclusion of any platform, program, application, or software in Section I as examples does not create any independent obligation or commitment to preserve or collect ESI from such platform, program, application, or software. The Parties reserve all rights to object to any demand to collect or produce ESI from any or all of the examples listed in Section I.

d.      **Modification by Agreement**.  Any practice or procedure set forth herein may be varied by agreement of all affected Parties, which will be confirmed in writing, if such variance is

deemed appropriate to facilitate the timely and economical exchange of Documents and ESI.  Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from any practice or procedure set forth herein must obtain leave of Court to do so unless all affected Parties otherwise consent in writing.  Before seeking Court intervention, all affected Parties shall meet and confer in good faith regarding any modification.

   e. **Modification by Court Order**.  Nothing in this Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided that counsel for such Party first meet and confer with counsel for the opposing Party and the Parties use reasonable best efforts to negotiate an exception from or modification to this Protocol prior to seeking relief from the Court.

## III. COOPERATION

   The Parties are aware of the importance the Court places on cooperation and, consistent with the Federal Rules of Civil Procedure and the Local Rules of this Court, commit to cooperate in good faith throughout discovery.  The Parties agree to meet and confer on any issues associated with deviation from the Order and to approve any such deviation in writing.  The Parties further agree to meet and confer on any discovery disputes regarding document production and ESI, such as identification of Custodians or relevant ESI, potentially relevant data sources, search methodologies, and other issues as may arise during the course of discovery.

## IV. PRESERVATION

   The Parties agree that they shall continue to take reasonable steps to preserve relevant Documents and ESI in accordance with their obligations under applicable law.  The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with

this litigation and disclosures regarding custodians, data sources, date ranges, and categories of information necessary to facilitate the Parties' negotiations.  By preserving information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

## V.      PRODUCTION OF STRUCTURED DATA

If a discovery request requires production of Structured Data, the Parties shall meet and confer regarding production in Native Format or, alternatively, on the content and format of a data extraction from such structured data source.  The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in any extraction and the format in which data extracted from the data source shall be produced.  The Producing Party shall make all disclosures necessary for the Requesting Party to understand and evaluate whether the content and format of a proposed data extraction would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database scheme, or other relevant information.  The Producing Party shall generate a sample report of such extracted data for review by the Requesting Party or counsel upon agreement of the Parties as to the fields to be produced and the format of production.  The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

## VI.     IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties will meet and confer regarding the methods to be used to search Documents and ESI for potentially responsive documents or filter out Documents and ESI that are not subject to discovery, and such meet and confers will include disclosures necessary for the Requesting Party to understand and assess the sufficiency of the proposed search or filtering methodology, such as the nature of and processes of the search technology employed, the custodians and data sources and types to which it will and will not be applied, date ranges that may be used to filter

documents, file types subject to or excluded from the methodology, search terms proposed to be used (if any), statistical sampling or validation techniques the Producing Party has used or intends to use to evaluate the sufficiency of the methodology, and whether different search methodologies will be applied to different types or sources of data.  During such discussions, the Producing Party shall retain the sole right and responsibility to manage and control searches of its data files, including the right to use search-term methods or propose Predictive Coding/Technology Assisted Review procedures to make them more accurate and cost-effective.  The Producing Party, however, shall disclose any search-term methods to be used to identify potentially responsive documents.  Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a Court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to the completion of discovery.  The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

a.    **Search Terms**:  If, after disclosure of the Producing Party's proposed search method, search parameters, and search terms and prior to the conduct of any searches, a Requesting Party believes in good faith after a reasonable meet and confer process that the Producing Party's proposals regarding search, retrieval, and production would result in deficiencies in production, the Requesting Party may make prompt requests for different or additional search methods, parameters, or search terms.  If the Parties cannot resolve their disagreements regarding search term methodologies, either party may bring the dispute to the Court for resolution.

b.    **Technology-Assisted-Review**:  No Party shall use Predictive Coding/Technology Assisted Review for the purpose of culling the documents to be reviewed or produced without notifying the opposing Party prior to use and with ample time to meet and confer in good faith

regarding a mutually agreeable protocol for the use of such technologies, if any.  If the Parties cannot resolve any disagreements regarding technology assisted review methodologies, they shall promptly bring the dispute to the Court for resolution.  The fact that a Document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive or that it is protected from disclosure by applicable privilege or work-product protection.

## VII.    PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

The following production specifications apply to Documents that existed in paper format prior to production ("hard copy documents").  Documents that originated as paper but which were scanned and maintained electronically by a Party prior to inception of this Action shall be produced in accordance with Section VII of this Protocol.  The Parties agree to produce hard copy documents in the formats described below, to the extent reasonably practicable and not unduly burdensome.  These formats are deemed to be productions in reasonably usable form.  If a Producing Party intends to produce any hard copy documents in any manner other than as specified herein, the Producing Party shall notify the Requesting Party of its intent, including production format (e.g., produced as paper, made available for inspection).  If the proposed production format is not acceptable to the Requesting Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Documents.

a.    **TIFFs**.  Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi.  Bates numbers, confidentiality designations (in accordance with the protective order governing this Action), and redactions (to the extent they are necessary) should be burned into the image.  TIFF image files should be provided in an "Images" folder.

9

b.      **Unitizing Documents**.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container.  The front cover of the container should be produced immediately before the first document in the container.  The back cover of the container should be produced immediately after the last document in the container.  The Parties will undertake reasonable efforts to, or have their vendors, logically unitize documents correctly and will commit to address situations of improperly unitized documents.

c.      **Attachments**.  The Parties agree that if any part of a Document or its attachments is responsive the entire Document and attachments will be produced, except that attachments may be withheld or redacted on the basis of privilege (including attorney/client, work-product doctrine, or any recognized privilege), responsiveness, or relevance.  The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved.   The child-document(s) should be consecutively produced immediately after the parent-document.  Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

d.      **OCR**.  To the extent that documents that exist in paper or hard copy format have been run through OCR software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the

document.  Text files should be provided in a "Text" folder.  To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

   e.  **Unique IDs**.  Each TIFF image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in the Action.

   f.  **Data Load Files**.  Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

     i.  Field Separator: ASCII character 20 ("¶");

     ii.  Quote: ASCII character 254 ("þ"); and

     iii.  New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files should be provided in a "Data" folder.

   g.  **Metadata**.  Each of the Metadata and coding fields set forth in Appendix A shall be produced for that Document to the extent such Metadata is available.

   h.  **Color**.  Documents containing color need not be produced in color in the first instance, provided that the Producing Party retain a copy of produced hard copy documents in color.  However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format;

and (ii) an explanation of the need for production in color format.  The Producing Party shall not unreasonably deny such requests.

## VIII.   PRODUCTION FORMAT FOR UNSTRUCTURED ESI

The Parties agree to produce in the formats described below, if not in Native Format.  These formats are deemed to be productions in reasonably usable form.  If any Party contends that particular Documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents.

a.    **TIFFs**.  Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi.  The document's original orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations (in accordance with the protective order governing this Action), and redactions (to the extent they are necessary) should be burned into the image, without obscuring the document's content.  TIFF image files should be provided in an "Images" folder.

b.    **Extracted Text Files**.  The full text of native files should be extracted directly from the native file (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.  Text files should be provided in a "Text" folder.  To the extent that a document is redacted, the document should undergo OCR after the text has been redacted to remove the redacted text.

c.    **Chat Data.**  For ESI that is chat data, if available, ESI should be provided in the original Native Format, or if the chat data that existed at the time this Action was filed was not maintained in that format at the time of filing, the Parties should use best efforts to produce in an export format (such as TIFF and/or HTML and/or .eml format).

d.    **Unique IDs**.  Each image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-

padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in this Action.

e.      **Parent-Child Relationships**. The Parties agree that if any part of an Email or its attachments is responsive the entire Email and attachments will be produced, except that attachments may be withheld or redacted on the basis of privilege (including attorney/client, work-product doctrine, or any recognized privilege), responsiveness, or relevance, and the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

f.      **Metadata.** The Parties agree that Metadata will be produced for all ESI, whether produced in Native Format or Static Image formats. Appendix A sets forth the minimum metadata fields that must be produced to the extent that metadata exists for a particular document. To the extent that metadata does not exist, is not reasonably accessible or available, would be unduly burdensome to collect, nothing in this ESI Protocol shall require any Party to extract, capture, collect, or produce such data. However, the Producing Party shall identify to the Receiving Party any document or metadata not produced due to a claim that that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect.

g.     **Production of Documents in Native Format**.

1.     The processed native for all spreadsheets (e.g., MS Excel, CSV, or similar), presentation files (e.g., PowerPoint), and electronic information containing audio or video components should be produced and linked to the database by the metadata field "NativeLink."

2.     The Requesting Party may ask for certain other documents and/or databases initially produced in TIFF format to be produced in their Native Format in the event that the TIFF format is not reasonably usable.   The Requesting Party shall identify the documents by their Bates numbers and the documents should be produced in their unaltered Native Format.

3.     When native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number.  The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format.  The placeholder will be branded with the production number in the lower right hand corner and the phrase or substantially similar phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page.  The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

4.     To the extent that a native spreadsheet must be redacted, the Producing Party may redact either a copy of the native file or produce TIFF images with burned in redactions in lieu of a native file and TIFF placeholder image.  If redacting TIFF images and to the extent that any of the following can be automated, the Producing Party, or its ediscovery vendor, should make reasonable efforts to (i) reveal hidden rows, columns, or

sheets prior to converting the document to TIFF; (ii) clear any filters that may conceal information; (iii) adjust column widths so that numbers do not appear as "########"; (iv) ensure that column and row headings print; (v) ensure that the tab name appears in the header or footer of the document; (vi) process comments so that they are produced at the end of the spreadsheet; and (vii) process spreadsheets so that they print across then down. If good cause exists, the Requesting Party may ask the Producing Party to manually undertake the foregoing for certain documents identified by Bates number by the Requesting Party to the extent the document was originally produced with concealed information.  The Producing Party shall not unreasonably deny such a request.

5.      **Request for Native Files**.  Other than as specifically set forth above, a Producing Party need not produce documents in Native Format.  If good cause exists for the Requesting Party to request production of certain documents in Native Format, the Requesting Party may request production in Native Format by providing (i) a list of the Bates numbers of documents it requests to be produced in Native Format; and (ii) an explanation of the need for reviewing such documents in Native Format.  The Producing Party shall not unreasonably deny such requests.  The Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, all Extracted Text, and applicable metadata fields.

h.      **Track Changes, Comments, and Similar Data**.  To the extent that a Document or ESI contains tracked changes or comments, the Document or ESI should be imaged showing tracked changes and comments.  Presentation files if processed to TIFF format shall be produced showing comments, hidden slides, speakers' notes, and similar data.

i.      **Password-Protected Files.**  The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents and ESI are successfully processed for review and production.

j.      **Embedded Documents.**   Embedded files in responsive documents shall be extracted during processing and produced as separate documents.  The Bates number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Exhibit A.

k.      **Data Load Files.**  Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

1.      Text Delimiter AKA "Quote" – "þ", Hex (FE), Unicode (U+00FE), Decimal (254) 2.

2.      Field Separator AKA "Comma" – "", Hex (14),

3.      Unicode (U+0014), Decimal (20)

4.      Quote: ASCII character 254 ("þ"); and

5.      New Line: ASCII character 174 ("®").

All rows will contain the same number of delimiters and fields.  The multi-value field delimiter must be consistent across all fields.  For example, if the CC field contains semi-colons between Email addresses, the Tag field should also contain semi-colons.  Concordance-compatible image and data load files should be provided in a "Data" folder.  Parties have the option to exchange sample load files.  If this exchange occurs, the Requesting Party will have 14 days to respond with Load File change requests.  Nothing in this Order will limit the Parties from discussing Load File changes throughout the course of the Action.

l.      **Deduplication**.  A Producing Party shall globally deduplicate by exact duplicate families provided that (i) only exact (bit-by-bit) duplicates are subject to deduplication; (ii) the Producing Party identifies all additional custodians in an Additional Custodian metadata field, with entity/departmental custodians being identified with a description of the entity or department and a uniform description of a particular custodian being used across productions; and (iii) an Email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.  If processing is done on a rolling basis, an updated Additional Custodian field with additional values shall be provided in an overlay.  Parties should deduplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the parent level. Any Party opting to deduplicate in a different manner from the foregoing procedure shall disclose their deduplication methodology to the Requesting Party prior to deduplication.  If the Requesting Party objects to the methodology, it shall timely raise those concerns with the Producing Party. Hard copy documents shall not be eliminated as duplicates of responsive ESI unless such documents are exact duplicates of the ESI.

m.      **Production of Audio and Video Recordings**.  If audio and/or video recordings are responsive and not readily producible in accordance with Section VII.g.1, above, the Parties should meet and confer to determine a mutually agreeable format for producing the audio and/or video recording and/or, to the extent a Producing Party objects to producing such responsive audio and video recordings on grounds of undue burden, regarding the basis for the claim of undue burden.

n.      **Production of Transcripts**.  If deposition or other transcripts are responsive, the Parties should meet and confer to determine a mutually agreeable format for producing the transcripts.

o.      **Custodian or Originating Source**.  The custodian or originating source shall be identified in the Custodian field of the database load files.  Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person.  Documents found in the possession of a department, group, entity, or other common facility (e.g., office, file room, archive, network storage, file share, back-up, hard drive) should be produced in such a fashion as to identify the department, group, entity, or facility.  A Producing Party shall use a uniform description of a particular custodian across productions.

p.      **Color**.  Documents containing color need not be produced in color in the first instance.  However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format.  The Producing Party shall not unreasonably deny such requests.

q.      **Foreign Language**.  Foreign language text files and Metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

r.      **Date Format:**

1.      Dates and times must be concatenated into a single field, with a format of MM/dd/YYYY HH:MM:ss (zzz).

2.      If a time is not available, such as the estimate date for a coded document, then 12:00 am or 00:00 should be assigned (i.e., "12/21/1999 00:00").

3.      Date delimiters, such as slashes and colons, must be consistent across all fields.  In the format of MM/dd/YYYY, there are no spaces and only forward slashes.

4.      Date formats must be consistent within any one field.

5.      Date formats must be consistent across all fields, e.g., a record with a sent date should have the same format in the last modified date field.

s.      **Production Media**.  The preferred means of producing documents is via secure FTP or secure file share.  However, documents may also be produced via CD, DVD, flash drive, or hard drive.  To the extent possible, physical media should be protected before it is produced.

t.      **Naming Convention for Production Media**.  Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc.  The compressed file should be named so as to indicate the Producing Party, the date of the production, and the sequence of the production (e.g., "FX Production 20150508-001").  If the production is made using physical media, the media should be labeled to include (i) text referencing that it was produced in the Action; and (ii) the Bates number range of the materials contained on the media.

u.      **Replacement Productions**.  Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

v.      **Encrypted Data**.  To the extent a production is encrypted before it is produced, the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data.

IX.     **ASSERTIONS OF PRIVILEGE**

a.      Within 15 days of serving a written response to a request for production of documents ("RFP") or any supplemental response to a RFP, the Producing Party may make a request to be relieved of the burden to prepare a detailed privilege log of documents being withheld.  If no request is made, a Producing Party shall serve a detailed privilege log within 30 days of a written response to any RFP or any supplemental response to an RFP.

b.      If a request to be relieved of the burden to prepare a detailed privilege log is made pursuant to Section VIII.a, above, the Parties shall have 30 days to meet and confer to determine the extent to which detailed privilege logs are necessary, whether the Producing Party may be relieved of that obligation, in full or in part, or whether a categorical privilege log may be sufficient.  If the Parties cannot agree to a privilege log format, either Party may seek review from the Court pursuant to the Court's discovery dispute procedures within 30 days of the request to be relieved of the obligation to provide a detailed privilege log.  If no Party seeks review of the request to be relieved, the Producing Party shall serve a detailed privilege log within 75 days of a written response to any RFP or any supplemental response to a RFP.

c.      A Party's failure to provide any privilege log within the longer of a) the 30-day period described in Section IX.a, above; b) the 75-day period described in Section IX.b, above; or c) the time in which any dispute is pending before the Court, shall not be deemed a waiver of any assertion of privilege or other protection from disclosure.

d.      Unless otherwise agreed by the Parties, detailed privilege logs shall contain the following information:

1.      A sequential number associated with each privilege log record;

2.      The date of each document;

20

3.      To the extent reasonably available, the identity of all persons designated as addressees or copyees (including blind copyees), along with other information about them necessary for the Requesting Party to assess the privilege and identify which of them are attorneys, clients, and third parties;

4.      A description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;

5.      The type or nature of the privilege asserted (i.e., attorney-client privilege, work-product doctrine) and the basis for asserting such privilege; and

6.      The type of document (e.g., Email, letter PDF, Excel, etc.).

r.      **Logging of Document Families.**

1.      If multiple members of a document "family" (e.g., an email attaching a memorandum or other document, etc.) are withheld or redacted on the grounds of privilege, immunity, or any similar claim, each member should be logged separately with a field that describes the family relationship.  The description must provide sufficient detail to indicate the nature of the privilege for each family member.

2.      For document families in which not all of the documents are withheld or redacted as privileged or protected, the log entry for the withheld document(s) shall identify the Bates number of the produced family member.

s.      **Exceptions.**  The following documents presumptively need not be included on a privilege log:

1.      Communications exclusively between a Party and its outside counsel regarding this Action; and

2.      Work product created by outside counsel, or by an agent of outside counsel other than a Party or third-party vendor, regarding this Action and created after commencement of this Action.

Documents not responsive to the Requesting Party's substantive document requests (as modified by the Producing Party's responses and objections to such requests) need not be logged, notwithstanding that such documents may have been within scope of regulatory productions that are being re-produced here.

## X.    THIRD PARTY DOCUMENTS

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall timely notify other Parties when it receives non-party productions, and shall, upon request by other Parties ("requsting Parties" for purposes of this paragraph), provide copies of such productions to requesting Parties in the format in which they were received from the third-party.  In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to requesting Parties.  Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

DATED:  June 29, 2020

*/s/ Maria A. Boelen*
George J. Tzanetopoulos
Maria A. Boelen
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606-2841
Tel: (312) 416-6200
Fax: (312) 416.6201
gtzanetopoulos@bakerlaw.com
mboelen@bakerlaw.com

Paul G. Karlsgodt
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO  80202
Tel: (303) 861.0600
Fax: (303) 861.7805
pkarlsgodt@bakerlaw.com

*Counsel for Defendant Hy-Vee, Inc.*

*/s/ Andrew W. Ferich*
Benjamin F. Johns
Andrew W. Ferich
Alex M. Kashurba
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com
awf@chimicles.com
amk@chimicles.com

Ben Barnow
Erich P. Schork
**Barnow and Associates, P.C.**
205 W. Randolph St., Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

*Interim Co-Lead Class Counsel*

**IT IS SO ORDERED.**

June ____30____, 2020

 */s/ Michael M. Mihm*
Michael M. Mihm
United States District Judge

## APPENDIX A

## Production Load File Fields

| FIELD | DESCRIPTION | Non-ESI | ESI |
|---|---|---|---|
| BEGBATES | Beginning Bates number assigned to each document.  Format XXXXXX_00000001 | Y | Y |
| ENDBATES | Ending Bates number assigned to each document.  Format XXXXXX_00000001 | Y | Y |
| BEGATTACH | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated.  Format XXXXXX_00000001 | Y | Y |
| ENDATTACH | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated.  Format XXXXXX_00000001 | Y | Y |
| ATTACHCOUNT | The number of attachments to a document. | N | Y |
| ATTACHIDS | BEGBATES number(s) of all attached documents. | N | Y |
| PGCOUNT | The image count for a document. | Y | Y |
| PARENTID | BEGBATES number of parent document. | N | Y |
| PARENTDATE | The date of the parent document. | N | Y |
| CUSTODIAN | Name of the individuals, departments, or servers where the file was originally stored or kept. | Y | Y |
| DUPECUSTODIAN | Name of individuals who possessed a de-duplicated document. | Y | Y |
| DOCTITLE | The extracted document title of a document. | N | Y |

| FIELD | DESCRIPTION | Non-ESI | ESI |
|---|---|---|---|
| SUBJECT | The subject line of the email. | N | Y |
| DATESENT | The date and time an email was sent. Formatted as MM/DD/YYYY | N | Y |
| TIMESENT | The time stamp indicating hour minutes seconds that the email was sent.  Formatted as HH:MM:SS in UTC | N | Y |
| DATECREATED | The date extracted from a field which contains the date a file was created.  Formatted as MM/DD/YYYY | N | Y |
| TIMECREATED | The time stamp indicating hour minutes seconds that the file was created.  Formatted as HH:MM:SS in UTC | N | Y |
| DATELASTMOD | The date extracted from a field which contains the date a file was last modified.  Formatted as MM/DD/YYYY | N | Y |
| TIMELASTMOD | The time stamp indicating hour minutes seconds that the file was last modified.  Formatted as HH:MM:SS in UTC | N | Y |
| LASTMODIFIEDBY | The name of the last person to edit the document from extracted metadata. | N | Y |
| DATERECD | The date and time an email was received.  Formatted as MM/DD/YYYY | N | Y |
| TIMERECD | The time stamp indicating hour minutes seconds that the email was received.  Formatted as HH:MM:SS in UTC | N | Y |
| FILENAME | The name of the electronic file. | N | Y |

| FIELD | DESCRIPTION | Non-ESI | ESI |
|---|---|---|---|
| FILEPATH | A file location or directory path description for the electronic file, that includes the drive, starting or root directory, all attached subdirectories, and ending with the file or object name.  Often referred to as the Path Name | N | Y |
| FILESIZE | The file size of the electronic document (including imbedded attachments). | N | Y |
| FILEEXT | The file extension of the electronic document. | N | Y |
| TIMEZONE | The time zone in which e-mails or data was processed. | N | Y |
| DOCAUTHOR | The author of an electronic file. | N | Y |
| FROM | The originator of the email message. | N | Y |
| RECIPIENT | The recipient(s) of an email.  Multiple recipients should be separated by a semicolon (;). | N | Y |
| CC | Names of copied recipients of an email.  Multiple recipients should be separated by a semicolon (;). | N | Y |
| BCC | Names of blind copied recipients of an email.  Multiple recipients should be separated by a semicolon (;). | N | Y |
| EMAIL CONVERSATION INDEX | A hexadecimal number string created by an email program on outgoing messages, indicating the relative position of a message within a specific email thread. | N | Y |
| EMAILHEADER | The text portion of an email that contains routing information of the email and may include author, recipient, and server information, which tracks the path of the email from its origin server to its destination mailbox. | N | Y |

3

| FIELD | DESCRIPTION | Non-ESI | ESI |
|---|---|---|---|
| DOCTYPE | Document type. | N | Y |
| HASH | Programmatic hash value of the native electronic file from which a given TIFF image or group of TIFF images is derived. | N | Y |
| PRODTEXT LINK | Link to produced text. | Y | Y |
| HIDDEN TEXT | Description, e.g. "Excel Hidden Rows." | N | Y |
| TRACKED CHANGES | Description, e.g. "Contains Track Changes." | N | Y |
| COMMENTS | The comments contained in the file. | N | Y |
| NATIVE | Y/N Field. | Y | Y |
| NATIVE LINK | Link to native, if produced. | N | Y |
| REDACTION | Y/N Field. | Y | Y |
| CONFIDENTIAL | Y/N Field. | Y | Y |